*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 56**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

KRISTI RAGSDALE,
*Appellant/Cross-appellee,*

*v.*

GEORGE FISHLER,
*Appellee/Cross-appellant.*

No. 20180993
Heard April 10, 2020
Filed August 5, 2020

On Direct Appeal

Third District, Salt Lake
The Honorable Amber M. Mettler
No. 170903926

Attorneys:

Stacy J. McNeill, James C. Dunkelberger, Salt Lake City,
for appellant/cross-appellee

Karthik Nadesan, Salt Lake City, for appellee/cross-appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PEARCE,
JUSTICE PETERSEN, and JUDGE HAGEN joined.

Having recused himself, JUSTICE HIMONAS does not
participate herein;
COURT OF APPEALS JUDGE DIANA HAGEN sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1    Kristi Ragsdale runs Eva Carlton Academy (ECA), a
residential treatment program for young women, out of her home
in a Salt Lake City suburb. Her neighbor, George Fishler, strongly

objects to ECA's presence in his neighborhood. He expresses this objection by placing provocative signs in his yard, and by flipping off and swearing at Ms. Ragsdale and others entering or exiting ECA. In response to this behavior, Ms. Ragsdale sought a civil stalking injunction against Mr. Fishler. The district court denied both this injunction and Mr. Fishler's request for attorney fees. Both parties now appeal.

¶2   On appeal, Ms. Ragsdale raises three issues. First, she claims the district court erred in concluding that Mr. Fishler did not stalk her, because he directed his conduct toward ECA as a business. We reverse and remand on this issue because, in ruling that Mr. Fishler's conduct was ultimately directed at ECA, the district court misinterpreted the stalking statute.

¶3   Second, Ms. Ragsdale claims the district court erred in concluding that Mr. Fishler did not stalk her based on its finding that Mr. Fishler's conduct would not cause a reasonable person to suffer fear or emotional distress. We reverse and remand on this issue as well. The district court failed to assess the impact of Mr. Fishler's conduct on a reasonable person in Ms. Ragsdale's circumstances.

¶4   Third, Ms. Ragsdale argues that the district court improperly denied her injunction on the grounds that the First Amendment protects Mr. Fishler's conduct. We reverse and remand here, too, because the district court applied an incorrect First Amendment analysis.

¶5   Fourth, on cross-appeal, Mr. Fishler argues that the district court erred in denying his attorney-fees request. Because our reversal of the first three issues may affect the basis for the district court's attorney-fees decision, we vacate that decision and remand for a new determination.

## Background

¶6   Ms. Ragsdale is the founder and executive director of the Eva Carlston Academy, an inpatient treatment facility for young women recovering from severe depression and anxiety. She operates ECA from her private residence, which is located at the end of a cul-de-sac in a Salt Lake City suburb. When she launched ECA in 2013, some neighbors feared it would increase noise and traffic in the neighborhood. Several neighbors distributed flyers and petitioned their local community council in an attempt to stop ECA from opening. But they were ultimately unsuccessful.

¶7 George Fishler was one of these neighbors. He owns the home directly south of ECA. After his initial efforts to stop ECA failed, he began protesting the facility directly. To that end, he put two sets of signs in his yard, one reading "TROUBLED TEEN MONEY MACHINE BECOME DISABLED FOR ONLY $10,000/MONTH" and the other reading "DELIVER US FROM EVA." He pointed one set toward the street and the other toward ECA. He also began flipping off and swearing at employees, clients, and anyone else involved with ECA.

¶8 This behavior continued for the next four years. Throughout this period, Ms. Ragsdale claims Mr. Fishler would flip her off whenever she left her home. She also claims that over time, he became more assertive, coming out of his garage to say things like "fuck you," "fuck off," or "go fuck yourself," or waiting in his car to accost Ms. Ragsdale as she left her home. Ms. Ragsdale also claims Mr. Fishler would call her and the young women staying at ECA "fucking bitches," "little bitches," "little assholes," and would tell them to "run away, little assholes." Many of these interactions happened when Ms. Ragsdale was the only person in Mr. Fishler's presence. And on several occasions, Mr. Fishler's conduct prompted Ms. Ragsdale to call the police.

¶9 In June 2017, Ms. Ragsdale sought a civil stalking injunction against Mr. Fishler under Utah Code section 77-3a-101(2) (2017).[1] The district court issued an ex parte injunction on June 19, 2017. Mr. Fishler then requested an evidentiary hearing under Utah Code section 77-3a-101(6) (2017), which the district court held on July 27 and August 2, 2017.

¶10 At this hearing, Ms. Ragsdale testified about Mr. Fishler's conduct and the emotional distress she experienced as a result. She testified that she suffered anxiety, sleeplessness, and nausea, and installed automatic locks on ECA's doors out of fear of Mr. Fishler. In response, Mr. Fishler argued that his conduct amounted to a peaceful protest against ECA. This protest, he claimed, did not meet the statutory definition of stalking and was protected by the First Amendment.

---

[1] The Utah Legislature amended and renumbered this statute during its 2020 general session. *See* H.B. 403, 63d Leg. 2020 Gen. Sess. (Utah 2020); UTAH CODE § 78B-7-701. "We refer to the version of the statute in effect at the time of the [events in question]." *State v. Bridgewaters*, 2020 UT 32, ¶ 2 n.1, 466 P.3d 204.

¶11 Ms. Ragsdale also requested that the district court expand its ex parte injunction. In so doing, she submitted a proposed injunction with four distinct provisions. The first was a "Personal Conduct Order" barring Mr. Fishler from conduct that meets the legal definition of stalking. The second was a "No Contact Order" preventing Mr. Fishler from contacting Ms. Ragsdale, her coworkers, and her clients as they entered or exited ECA. The third was a "Stay Away Order" directing Mr. Fishler to stay away from ECA. And the fourth was a form of miscellaneous relief, titled "Other Orders," requiring Mr. Fishler to take down his derogatory yard signs.

¶12 Following the hearing, the district court denied Ms. Ragsdale's request for a permanent injunction. It held that even though Mr. Fishler's conduct was "offensive, upsetting, rude[,]" and "abhorrent," it did not constitute stalking. According to the district court, Mr. Fishler did not direct his conduct at Ms. Ragsdale but toward ECA as a business. And even if he had, the district court held, his conduct would not cause a reasonable person in Ms. Ragsdale's circumstances to suffer fear or emotional distress. "In this day and age," explained the district court, "exposure to pejorative gestures and profanity should not cause the type of significant mental or emotional distress envisioned by the [stalking] statute." The district court also denied Ms. Ragsdale's injunction on the grounds that Mr. Fishler's conduct was protected by the First Amendment.

¶13 Afterwards, Mr. Fishler moved for attorney fees under the civil stalking statute. In between the evidentiary hearing and this motion, the judge who denied Ms. Ragsdale's injunction retired, and a new judge was assigned to rule on Mr. Fishler's fee request. This new judge noted she was "at somewhat of a disadvantage" in ruling on Mr. Fishler's motion, because she did not preside over the evidentiary hearing and was making her decision from a "cold record." After oral argument, the district court denied this request, finding that the equities weighed in favor of denial because the case had been "fact-sensitive," "complicated," and did not lack "all merit."

¶14 Both parties now appeal. We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

## Standards of Review

¶15 The parties raise four issues on appeal. First, we must decide whether the district court erred in concluding that

Mr. Fishler did not direct his conduct at Ms. Ragsdale. We review this conclusion for correctness.[2]

¶16  Second, we must decide whether the district court erred in finding that Mr. Fishler's conduct would not cause a reasonable person to suffer fear or emotional distress. Although this is a question of fact that we review for clear error, we review the district court's interpretation of the underlying legal standard for correctness.[3]

¶17 Third, we must determine whether the district court incorrectly denied Ms. Ragsdale's injunction on the grounds that the First Amendment of the United States Constitution protects Mr. Fishler's conduct. We review the interpretation of the federal constitution for correctness.[4]

¶18 Finally, we must decide if the district court erred in denying Mr. Fishler's motion for attorney fees. When a statute "grants discretion to [district] courts to assess attorney fees, if appropriate, after considering the facts of the case," we review that assessment for abuse of discretion.[5]

**Analysis**

¶19  This case presents four issues. Ms. Ragsdale raises three in her direct appeal and Mr. Fishler raises one on cross-appeal.

¶20 First, Ms. Ragsdale claims the district court erred in concluding that Mr. Fishler's conduct was not "directed at" her, but

---

[2] *Baird v. Baird*, 2014 UT 08, ¶ 16, 322 P.3d 728 ("The proper interpretation and application of [the civil stalking] statute is a question of law which we review for correctness." (citation omitted) (internal quotation marks omitted)).

[3] *See id.* ¶¶ 22–32 (reversing the use of an incorrect standard on this issue and remanding for application of the correct standard).

[4] *Buschco v. Utah State Tax Comm'n*, 2009 UT 73, ¶ 8, 225 P.3d 153.

[5] *Paul deGroot Bldg. Servs., L.L.C. v. Gallacher*, 2005 UT 20, ¶ 18, 112 P.3d 490; *see also Dahl v. Dahl*, 2015 UT 79, ¶ 168, 459 P.3d 276 ("The decision of whether to award attorney fees pursuant to section 30-3-3 of the Utah Code rests in the sound discretion of the district court. As such, we review the district court's award or denial of fees for abuse of discretion.").

toward ECA as a business.[6] We agree. The district court based its conclusion on a misunderstanding of the stalking statute. So we reverse and remand for application of the correct standard.

¶21 Second, Ms. Ragsdale claims the district court erred in concluding that Mr. Fishler's conduct would not cause a reasonable person to suffer fear or emotional distress. Again, we agree. The district court did not properly assess the impact of Mr. Fishler's conduct on a reasonable person in Ms. Ragsdale's circumstances. So we reverse and remand on this issue as well.

¶22 Third, Ms. Ragsdale claims the district court incorrectly denied her injunction on the grounds that Mr. Fishler's conduct is "political speech" protected by the First Amendment. We reverse here as well. Although Mr. Fishler is entitled to the protection of the First Amendment, that protection does not exempt him from being enjoined from conduct that meets the definition of stalking. So we remand with instructions for the district court to conduct a new First Amendment analysis consistent with this opinion.

¶23 Finally, Mr. Fishler argues that the district court erred in denying his motion for attorney fees under the civil stalking statute. Because we reverse on the other three issues, we vacate the district court's attorney-fees decision and remand for a new ruling. In so doing, we clarify the standard for awarding fees under the civil stalking statute.

### I. The District Court Erred In Concluding That Mr. Fishler Did Not Direct His Conduct At Ms. Ragsdale

¶24 Ms. Ragsdale claims the district court erred in concluding that Mr. Fishler's conduct was not "directed at" her, but toward ECA as a business. We agree. The district court erred in concluding that because Mr. Fishler claimed to subjectively target only ECA, he did not direct his conduct at Ms. Ragsdale. So we reverse and remand. On remand, the district court must identify the alleged instances of conduct directed at Ms. Ragsdale and determine whether any, some, or all of those instances contributed to a course of conduct prohibited by the stalking statute.

¶25 Under Utah's civil stalking statute, a person "who believes that he or she is the victim of stalking" may obtain an injunction

---

[6] UTAH CODE § 76-5-106.5(2).

against an alleged stalker.[7] To do so, that person must prove by a preponderance of the evidence that "an offense of stalking has occurred."[8] The crime of stalking consists of two elements. First, a person must "intentionally or knowingly engage[] in a course of conduct directed at a specific person."[9] Second, that person must "know[] or should know that the course of conduct would cause a reasonable person" to "fear for the person's own safety" or "suffer other emotional distress."[10] A district court may enjoin an alleged stalker only if both elements are met.[11]

¶26 According to the district court, Ms. Ragsdale did not prove that Mr. Fishler "engaged in a course of conduct directed specifically towards her." Instead, the district court concluded that Mr. Fishler's conduct "was directed towards ECA as a business and therefore not targeted towards [Ms.] Ragsdale." In other words, because Mr. Fishler's conduct "was directed towards anyone he believed to be associated with ECA, including [Ms.] Ragsdale," it was not specifically directed at Ms. Ragsdale.

¶27 Ms. Ragsdale disputes this conclusion. She argues that, under the plain meaning of the phrase "directed at," Mr. Fishler directed his conduct at her by "repeatedly communicat[ing] obscenities to [her] individually—often when they were the only two around." She also claims the district court "improperly considered" the fact that Mr. Fishler subjectively intended to direct his conduct at ECA.

¶28 In response, Mr. Fishler argues that the criminal stalking statute "unambiguously requires a petitioner to establish that the respondent . . . intentionally engaged in a course of conduct whose ultimate target was the petitioner." According to Mr. Fishler, this is because "an act may be 'directed' at a specific person"—in this case, ECA—even if that person is "not the recipient [of] or directly exposed to the act."

---

[7] UTAH CODE § 77-3a-101(2) (2017), *amended by* UTAH CODE § 78B-7-701.

[8] *Id.* § 77-3a-101(7) (2017).

[9] *Id.* § 76-5-106.5(2).

[10] *Id.*

[11] *Ellison v. Stam*, 2006 UT App 150, ¶ 20, 136 P.2d 1242.

¶29 When interpreting a statute, our "primary goal" is to ascertain the legislature's intent, the "best evidence" of which is "the plain language of the statute itself."[12] And when reading a statute's plain language, we presume "the legislature used each term advisedly according to its ordinary and usually accepted meaning."[13] "Indeed, we will not infer substantive terms into the text that are not already there . . . and [we have] no power to rewrite the statute to conform to an intention not expressed."[14]

¶30 To obtain a civil stalking injunction, a petitioner must first prove that the respondent "intentionally . . . engage[d] in a course of conduct directed at [the petitioner]."[15] The statute defines "course of conduct" as "two or more acts directed at or toward a [petitioner]."[16] The types of acts contemplated include those where "the [respondent] follows, monitors, observes, photographs, surveils, threatens, or communicates to or about" a petitioner, whether "directly, indirectly, or through any third party."[17] They also include instances where the respondent "approaches or confronts" a petitioner, appears at the petitioner's workplace or residence, or contacts the petitioner's employer or coworkers.[18]

¶31 But nothing in the statute defines the term "directed at." Nor does it expressly indicate that the petitioner must be the "ultimate target" of a respondent's course of conduct. To the contrary, under the statute's plain language, a respondent directs conduct at a petitioner by engaging in behavior contemplated by the statute two or more times. In other words, if a respondent follows, threatens, or communicates to a petitioner only once, he or she has not engaged in a course of conduct. But if a respondent follows, threatens, or communicates to the petitioner on two or

---

[12] *State v. Badikyan*, 2020 UT 3, ¶ 27, 459 P.3d 967 (citations omitted).

[13] *Id.* (citation omitted) (internal quotation marks omitted).

[14] *Assoc. Gen. Contractors v. Bd. of Oil, Gas and Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291 (alteration in original) (citation omitted) (internal quotation marks omitted).

[15] UTAH CODE § 76-5-106.5(2).

[16] *Id.* § 76-5-106.5(1)(a).

[17] *Id.* § 76-5-106.5(1)(a)(i).

[18] *Id.* § 76-5-106.5(1)(a)(ii).

more occasions, he or she engages in a course of conduct directed at the petitioner.

¶32 So, regardless of whether a petitioner is a respondent's ultimate target, the fact that the respondent engaged in any act proscribed by the statute two or more times makes his or her conduct "directed at" the petitioner. To hold otherwise—and require that a petitioner be the respondent's subjectively-intended ultimate target—would infer a substantive term into the statute not supported by its plain language.

¶33 Mr. Fishler fails to cite any authority to the contrary. He argues that two cases from our court of appeals support his alternate reading of the statute. But neither case supports the proposition that a petitioner must prove he or she was a respondent's "ultimate"—i.e., subjectively intended—target.

¶34 In the first case, *State v. Miller*, the court of appeals considered whether a criminal defendant violated a stalking injunction by sending disparaging emails about his victim to an attorney representing the victim's employer.[19] Although the defendant did not subjectively intend for these emails to reach the victim, the court still held that his actions fell "squarely within" the criminal stalking statute's ambit.[20] As the court explained, the statute "does not require that the perpetrator intend for his [or her] message to reach the victim."[21] Mr. Fishler argues that under *Miller*, an act may be directed at a petitioner even if he or she is "not the recipient or directly exposed to the act." He claims that Ms. Ragsdale is like the employer in *Miller*—someone who was "exposed" to his conduct, but not the person to whom his conduct was directed.

¶35 According to Mr. Fishler, the second case, *Carson v. Barnes*,[22] also supports his argument that a person "exposed" to a respondent's conduct is not always the respondent's ultimate target. There, a business owner sought an injunction after his landlord pulled a gun on two of his consultants and followed him

---

[19] 2019 UT App 46, ¶¶ 21, 24, 440 P.3d 868.

[20] *Id.* ¶ 21.

[21] *Id.* ¶ 20.

[22] 2016 UT App 214, 385 P.3d 744.

in his car on two separate occasions.[23] The landlord claimed that pulling a gun on the consultants was not an act "directed at" the business owner, because the owner was not present when it happened.[24] The court of appeals disagreed. It explained that to constitute stalking, conduct "need not be direct, and it includes situations in which the actor comes to the 'person's workplace' or 'contacts the person's . . . coworkers,' without requiring the presence of the victim."[25]

¶36 But neither *Miller* nor *Carson* stand for what Mr. Fishler claims. It is true that under both cases, a respondent may direct his or her conduct at someone indirectly or through a third person. But this does not mean that a petitioner must prove that he or she was a respondent's ultimate target. According to the *Miller* court, the fact that the defendant did not intend for his message to reach the victim was irrelevant.[26] Rather, the key inquiry was whether the defendant engaged in statutorily prohibited conduct. Likewise, *Carson* did not turn on whether the business owner or the consultants were the landlord's ultimate target.[27] What mattered was that the landlord engaged in statutorily prohibited conduct on multiple occasions.

¶37 So, to obtain a stalking injunction, a petitioner need not prove that he or she was a respondent's ultimate target. Rather, under the plain language of the stalking statute, a petitioner must instead prove that the respondent engaged in statutorily proscribed conduct on two or more occasions. In other words, the person toward whom a respondent's behavior is "directed at" is not necessarily determined by his or her subjective intent. Instead, it is determined by an objective assessment of whether the respondent engaged in conduct prohibited by the stalking statute. And this is true even where a respondent directs his or her conduct at a petitioner "indirectly or through [a] third party."

¶38 In addition, accepting Mr. Fishler's argument would risk reading into the criminal stalking statute a defense that its plain

---

[23] *Id.* ¶¶ 5–9.

[24] *Id.* ¶¶ 14, 18.

[25] *Id.* ¶ 17 (quoting UTAH CODE § 76-5-106.5(1)(b)) (alteration in original).

[26] *See Miller*, 2019 UT App 46, ¶¶ 20–21.

[27] *See Carson*, 2016 UT App 214, ¶¶ 17–18.

language does not support. The statute does not allow a respondent to escape the consequences of his or her actions by claiming that the petitioner was merely an intermediary for conduct directed at a third party. For example, assume the landlord in *Carson* brandished his gun at the consultants on two separate occasions. If the consultants sought an injunction against the landlord, the landlord could not raise as a defense the fact that the business owner was his ultimate target. Instead, both the consultants and the business owner would have grounds to obtain an injunction against the landlord.

¶39 The same is true here. The fact that ECA was allegedly Mr. Fishler's ultimate target does not shield him from the fact that he flipped off and communicated obscenities directly to Ms. Ragsdale on two or more occasions. It simply means ECA could potentially obtain an injunction against him as well.[28]

¶40 Accordingly, when assessing whether a respondent has engaged in stalking, district courts should determine if the respondent objectively engaged in statutorily proscribed conduct, rather than asking whether the petitioner was the respondent's subjectively intended target. This analysis requires a two-tiered approach. First, district courts should identify each alleged instance of conduct directed at the petitioner individually and then determine whether it falls within the range of conduct prohibited by the stalking statute. Second, if the respondent has allegedly directed conduct at a petitioner indirectly or through a third party, district courts should separately determine if the stalking statute also prohibits that conduct.

---

[28] But this does not mean that every person flipped off and sworn at two or more times by the same individual is entitled to a stalking injunction. In such situations, stalking petitioners must still prove that such behavior would cause a reasonable person in their circumstances to fear for his or her safety or experience "significant mental or psychological suffering." UTAH CODE §§ 76-5-106.5(2), -106.5(1)(b). In addition, on the issue of whether ECA could obtain an injunction, we note that at least one court has found its state's civil stalking statute to "protect[] institutions as well as people." *Bd. of Regents-UW System v. Decker*, 850 N.W.2d 112, 121 (Wisc. 2014). That said, neither party has asked us to decide whether the same is true of Utah's statute, so we take no position on this issue.

¶41 In this case, the district court erred by focusing on Mr. Fishler's alleged ultimate target. It found that Mr. Fishler's conduct "was directed towards anyone he believed to be associated with ECA, including [Ms.] Ragsdale." And it concluded that his conduct "was directed towards ECA as a business and therefore not targeted towards [Ms.] Ragsdale." But rather than determine whether Mr. Fishler subjectively targeted Ms. Ragsdale, the district court should have analyzed whether he objectively engaged in conduct proscribed by the stalking statute. So we reverse the district court's conclusion that Mr. Fishler's conduct was not "directed at" Ms. Ragsdale and remand for further proceedings.

¶42 On remand, the district court should assess whether Mr. Fishler's conduct objectively violated the criminal stalking statute. It should identify the instances where Mr. Fishler directed his conduct at Ms. Ragsdale individually and determine whether the statute prohibits the conduct at issue in any, some, or all of those instances. Then, it should identify those instances where Mr. Fishler directed his conduct at others and determine whether the statute prohibits that conduct as well. For example, in situations where Mr. Fishler communicated obscenities to ECA's staff or clients, the district court should determine whether this behavior amounts to communicating about Ms. Ragsdale[29] or contacting her coworkers.[30]

¶43 In sum, the district court erred in concluding that Mr. Fishler did not direct his conduct at Ms. Ragsdale. This error resulted from the mistaken understanding that Mr. Fishler could direct his conduct only at the person he claims was his subjectively intended target. Accordingly, we reverse this conclusion and remand for an objective assessment of whether Mr. Fishler's conduct violated the stalking statute.[31]

---

[29] UTAH CODE § 76-5-106.5(1)(a)(i).

[30] *Id.* § 76-5-106.5(1)(a)(ii)(B).

[31] Mr. Fishler also argues that Ms. Ragsdale invited the district court's incorrect interpretation of the stalking statute. We reject this argument. "[T]he invited error doctrine ensures that parties cannot entice the court into committing an error and then reap the benefit of objecting to that error on appeal." *State v. Moa*, 2012 UT 28, ¶ 25, 282 P.3d 985. According to Mr. Fishler, Ms. Ragsdale invited the district court's conclusion that a respondent only directs conduct at

(Continued)

## II. The District Court Erred In Finding That Mr. Fishler's Conduct Would Not Cause a Reasonable Person To Suffer Fear Or Emotional Distress

¶44 Ms. Ragsdale also claims the district court erred in concluding that Mr. Fishler's conduct would not cause a reasonable person to suffer fear or emotional distress. We agree with Ms. Ragsdale on this issue as well. Under the stalking statute, the district court should have considered the impact of Mr. Fishler's conduct not just on a reasonable person, but a reasonable person in Ms. Ragsdale's specific circumstances. It did not do so. So we reverse and remand for the district court to apply the correct standard.

¶45 Under the second stalking element, a petitioner must show that the respondent knew or should have known his or her conduct "would cause a reasonable person" to "fear for the [petitioner's] own safety" or "suffer other emotional distress."[32] This is an "objective standard" under which "the subjective effect of the respondent's conduct on the petitioner is irrelevant."[33] So a petitioner need only show that the respondent's conduct would affect "a reasonable person *in the petitioner's circumstances*."[34] In applying this standard, courts "must consider the entire context surrounding [a respondent's] conduct."[35] They must consider the conduct "cumulatively," accounting for "the facts and circumstances of the [individual] case."[36] In this context, "acts that seem perfectly innocent or even well intentioned may constitute

---

his or her subjectively intended target. In his view, she invited this error by claiming that any profane comments or gestures made by Mr. Fishler to other ECA employees were ultimately directed at her. But these arguments merely reflect Ms. Ragsdale's theory that Mr. Fishler was engaging in conduct prohibited by the criminal stalking statute, such as "communicating . . . about" Ms. Ragsdale "indirectly, or through any third party" and contacting Ms. Ragsdale's coworkers. *See* UTAH CODE § 76-5-106.5(1). So Ms. Ragsdale did not invite the district court's error.

[32] UTAH CODE § 76-5-106.5(2).

[33] *Baird v. Baird*, 2014 UT 08, ¶ 25, 322 P.3d 728.

[34] *Id.* (emphasis added).

[35] *Id.* ¶ 26.

[36] *Ellison v. Stam*, 2006 UT App 150, ¶ 38, 136 P.3d 1242.

stalking."[37] "For example, conduct such as sending the victim a dozen roses may seem benign and loving to the casual observer, but could mean a very different thing when understood in the context of the victim's experience."[38]

¶46 In this case, the district court failed to assess Mr. Fishler's conduct from the standpoint of a reasonable person in Ms. Ragsdale's circumstances. Instead of considering the individual facts and circumstances of Ms. Ragsdale's case, the district court simply concluded that, "[i]n this day and age, exposure to pejorative gestures and profanity should not cause the type of . . . emotional distress envisioned by the [stalking] statute."

¶47 This blanket conclusion does not reflect an assessment of the entire context surrounding Mr. Fishler's conduct. It does not account for the cumulative impact of his behavior from 2013 to 2017. Nor does it suggest that the court considered the fact that Mr. Fishler's conduct occurred where Ms. Ragsdale both lived and worked, nor the fact that he became more assertive over time. Indeed, given that something as innocuous as sending flowers could, in some cases, cause a reasonable person to suffer fear or emotional distress, we find it hard to conclude that profane gestures and comments categorically could not do so as well.

¶48 In defending the district court's conclusion, Mr. Fishler claims the district court did not err because its ruling expressly refers to the reasonable-person standard. We disagree. In its ruling, the district court held that Mr. Fishler's conduct would not cause "a reasonable person under the same circumstances as [Ms.] Ragsdale" to suffer fear or emotional distress. Elaborating on this conclusion, the district court said it was "not sure" that "a reasonable person should suffer significant [emotional distress] from expletives." This alone does not satisfy its obligation to assess Mr. Fishler's conduct from the standpoint of a reasonable person *in Ms. Ragsdale's circumstances*. To properly apply the stalking statute's objective standard, the district court should have analyzed his conduct in light of the specific facts and circumstances of Ms. Ragsdale's individual case.

¶49 Accordingly, the district court erred in concluding that Mr. Fishler's conduct would not cause a reasonable person to suffer

---

[37] *Baird*, 2014 UT 08, ¶ 26.

[38] *Id.* (citation omitted) (internal quotation marks omitted).

fear or emotional distress. It misapplied the stalking statute by failing to assess the impact of his conduct on a reasonable person in Ms. Ragsdale's circumstances. So we reverse. And because this issue is "a question of fact," we remand so the district court can apply the correct standard.[39]

### III. The District Court Applied the Incorrect Legal Standard to Mr. Fishler's First Amendment Challenge

¶50 Next, Ms. Ragsdale claims the district court erred in denying her injunction on the ground that the First Amendment protects Mr. Fishler's conduct. According to the district court, the First Amendment protects Mr. Fishler's "signs and conduct" because they constitute "political speech." It is true that the First Amendment entitles Mr. Fishler to some protection in this regard. But that protection does not necessarily shield him from a stalking injunction. When appropriate, courts may enjoin conduct that meets the definition of stalking even if it has a political objective. So we reverse on this issue.

¶51 Although "[p]olitical speech enjoys the broadest protection under the First Amendment,"[40] in appropriate circumstances, courts may still enjoin speech that meets the definition of stalking even if it has a political objective. In *Towner v. Ridgway*, for example, we analyzed a civil stalking injunction against a candidate for the United States Senate who repeatedly confronted a fellow party activist about their political disagreements.[41] We held that preventing the candidate from "contacting [the petitioner], directly or indirectly, through any form of communication . . . [did] not violate the First Amendment."[42]

---

[39] *Id.* ¶ 29. On remand, we suggest the district court consider the factors we listed in *Baird v. Baird*, 2014 UT 08, ¶ 27, for assessing the effect of a respondent's conduct on a reasonable person in the petitioner's circumstances. These factors include, but are not limited to, "the cumulative effect of the [respondent's] repetitive conduct," the petitioner's "background," "knowledge of and relationship with the [respondent]," and "any history of abuse between the parties." *Id.*

[40] *Jacob v. Bezzant*, 2009 UT 37, ¶ 29, 212 P.3d 535.

[41] 2008 UT 23, ¶¶ 1–2, 7, 182 P.3d 347.

[42] *Id.* ¶ 20.

¶52 Courts may issue civil stalking injunctions under specific, statutorily defined parameters.[43] These parameters include enjoining respondents "from committing stalking"[44] and restraining respondents "from coming near [a petitioner's] residence [or] place of employment."[45] They also include enjoining respondents "from contacting, directly or indirectly," the petitioner, the petitioner's "employers, employees, fellow workers, [and] others with whom communication would be likely to cause [the petitioner] annoyance or alarm."[46] In addition, courts may grant "any other relief necessary or convenient for the protection of the petitioner and other specifically designated persons under the circumstances."[47]

¶53 In *Towner*, we concluded that the proposed injunction did not violate the First Amendment, because it fell within these parameters. That injunction barred the respondent from "post[ing] communications on electronic media" that were "designed to harass or annoy" the petitioner and his family.[48] But it let the respondent continue posting "commentary on the substance of [the petitioner's] political positions."[49] The respondent argued that this restraint fell outside the statute's parameters and was "a content-based restriction on his speech in violation of the First Amendment."[50] We disagreed. Because the injunction precluded "communications from [the respondent] to [the petitioner], not communications by [the respondent] about [the petitioner] to others," we found it "well within the scope" of the stalking statute and consistent with the First Amendment.[51] So, under *Towner*, even

---

[43] *See* UTAH CODE § 77-3a-101(5) (2017), *amended by* UTAH CODE § 78B-7-701.

[44] *Id.* § 77-3a-101(5)(a)(i) (2017).

[45] *Id.* § 77-3a-101(5)(a)(ii) (2017).

[46] *Id.* § 77-3a-101(5)(a)(iii) (2017).

[47] *Id.* § 77-3a-101(5)(a)(iv) (2017).

[48] *Towner*, 2008 UT 23, ¶ 10.

[49] *Id.*

[50] *Id.* ¶ 19.

[51] *Id.* ¶ 20.

where speech has a political objective, courts may still enjoin it under the confines set by the civil stalking statute.

¶54 Here, when addressing Mr. Fishler's First Amendment challenge, the district court did not examine whether Ms. Ragsdale's proposed injunction fell within the stalking statute's parameters. Instead, it denied Ms. Ragsdale's injunction on the ground that Mr. Fishler's conduct constituted "political speech." In so doing, it explained that "[p]eople have a right to exercise their political speech" and "they can direct [that] right at the individuals" with whom they disagree. While we agree with the sentiment behind this statement, we find it an inadequate basis for denying Ms. Ragsdale's injunction. Like the candidate in *Towner*, Mr. Fishler cannot escape the ambit of the stalking statute just because his conduct allegedly had a political objective. And by concluding otherwise, the district court erred.

¶55 Accordingly, we reverse on this issue. But because the district court did not actually issue an injunction, we hesitate to opine any further on the precise standard for evaluating a civil stalking injunction under the First Amendment. We note, however, that the acknowledgement of a respondent's right to free speech is just the starting point in assessing whether part of that right must yield to the governmental interests underlying the stalking statute. This assessment also requires district courts to, at a minimum, determine whether each provision of a proposed injunction is content-based or content-neutral, and evaluate each provision under the corresponding level of scrutiny.[52]

¶56 In sum, by refusing to enjoin Mr. Fishler's conduct on the ground that it was political speech, the district court erred. Although the First Amendment protects Mr. Fishler, it does not automatically exempt him from being enjoined from conduct that meets the definition of stalking.

### IV. We Vacate the District Court's Denial of Mr. Fishler's Request For Attorney Fees and Remand For A New Determination Under Our Clarified Standard

¶57 Finally, Mr. Fishler cross-appeals the denial of his motion for attorney fees. He argues that the district court erred in denying his fee request because it applied the "incorrect" legal standard.

---

[52] *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163–68 (2015) (describing the framework for evaluating speech restrictions under the First Amendment).

Given that our ruling on the issues raised by Ms. Ragsdale may have affected the basis for the district court's decision, we vacate that decision and remand for a new attorney fees determination.[53] In so doing, we clarify the standard for awarding attorney fees under the civil stalking statute.

¶58 At issue is the civil stalking statute's attorney-fees provision. This provision states, in its entirety, that: "[a]fter a hearing with notice to the affected party, the court may enter an order requiring any party to pay the costs of the action, including reasonable attorney fees."[54] As both the parties and district court have pointed out, this language gives "almost no direction" on when to award fees. So we take this opportunity to clarify when a district court should award fees under this provision.

¶59 Significantly, the statute says that a court "*may* enter" an attorney-fee award.[55] We have previously explained that the legislature's use of the word "may" in a fee provision "clearly signal[s] an intention to yield discretion to courts over whether to award attorney fees."[56] This is especially true when the term "may" is "coupled with the absence of any guiding or limiting standard," as it is here.[57] When addressing similarly-worded statutes, we have "attempted to offer cautious direction regarding the exercise" of this "broad, discretionary authority over attorney fee awards."[58] We now do the same here.

¶60 In *Shurtleff v. United Effort Plan Trust*, we confronted a similar statute that vested courts "with discretion in assessing

---

[53] *See Brady v. Park*, 2019 UT 16, ¶ 112, 445 P.3d 395.

[54] UTAH CODE § 77-3a-101(16) (2017), *amended by* UTAH CODE § 78B-7-701.

[55] *Id.*

[56] *Paul deGroot Bldg. Servs., L.L.C. v. Gallacher*, 2005 UT 20, ¶ 22, 112 P.3d 490.

[57] *Id.* ¶ 24.

[58] *Id.* ¶¶ 20–24; *see also Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 952–953 (Utah 1996) (providing guidance on how district courts should exercise the "discretion bestowed by the 'may' language of the Utah Arbitration Act['s]" attorney-fees provision).

whether to award" attorney fees.[59] This statute, which was part of Utah's Uniform Probate Code, provided that courts "may, as justice and equity may require, award . . . reasonable attorney's fees[] to any party."[60] In instructing district courts on how to use the discretion granted to them by this language, we articulated several "nonexclusive" factors they should look to when making fee awards.[61] These factors include:

> (a) [the] reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and (e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.[62]

¶61 Given the similarities between the civil stalking statute and the *Shurtleff* statute, we find it appropriate to adopt these factors here as well. Through their use of the word "may," both statutes provide courts with marked discretion in awarding fees. But neither statute provides "specific guidelines or criteria" for district courts to use in making these awards.[63] By establishing uniform guidelines for fee decisions based on "general criteria drawn from other [attorney-fees] cases," the *Shurtleff* factors mitigate this problem.[64] So we hold that district courts should apply these factors when evaluating fee requests under the civil stalking statute, as well as any other statute that provides the discretion to award fees but no guidance on how to do so.[65]

---

[59] 2012 UT 47, ¶ 22, 289 P.3d 408.

[60] UTAH CODE § 75-7-1004(1).

[61] *Shurtleff*, 2012 UT 47, ¶ 23 (citation omitted).

[62] *Id.* (quoting *Atwood v. Atwood*, 25 P.3d 936, 947 (Okla. Civ. App. 2001)).

[63] *Id.* (citation omitted).

[64] *Id.* (citation omitted).

[65] We have sometimes "observed that the policies underlying" a statute "serve as useful guideposts" for exercising the discretion granted by these types of attorney-fees provisions. *Paul deGroot*

(Continued)

¶62 When applying the *Shurtleff* factors, it may be appropriate for a district court to award fees to a petitioner when it would indemnify them from the "costly, complicated, and discretionary process" of obtaining a civil stalking injunction.[66] But awarding fees to a petitioner may not be appropriate if it imposes financial hardship on a respondent or would be otherwise inequitable. In addition, although it may be appropriate to indemnify a respondent forced to defend a frivolous petition, courts should pause before awarding a respondent fees when a petition has some merit. This may chill future petitions—an outcome that strikes us as contrary to the statute's purpose.

¶63 In this case, we vacate the district court's denial of Mr. Fishler's attorney-fees motion and instruct it to make a new determination if the parties' seek attorney fees following the district court's final judgment on remand. We do so "[b]ecause our rulings on the other issues in this case may have upended the basis for the court's attorney fees decision."[67] The district court did not apply the *Shurtleff* factors when it denied Mr. Fishler's fee request. Instead, because the statute gave it "almost no direction" on when to award fees, the district court concluded that it must make "some sort of equitable determination." The district court also noted that it was "at somewhat of a disadvantage" because, having not

---

*Bldg. Servs.,* 2005 UT 20, ¶ 22; *see also Bilanzich v. Lonetti,* 2007 UT 26, ¶¶ 17–20, 160 P.3d 1041; *Buzas Baseball,* 925 P.2d at 953. This may be true for statutes like the reciprocal attorney-fee statute, UTAH CODE § 78B-5-826, or the Utah Arbitration Act, UTAH CODE § 78B-11-126, whose policies are well-established in our case law. *See Bilanzich,* 2007 UT 26, ¶ 18 (explaining that the policy behind the reciprocal attorney-fee statute is to "creat[e] a level playing field for parties to a contractual dispute" (alteration in original) (citation omitted) (internal quotation marks omitted)); *Buzas Baseball,* 925 P.2d at 953 (noting that the policies underlying the Utah Arbitration Act "favor the enforceability of arbitration awards and discourage relitigation of valid awards"). But statutes often advance multiple—sometimes conflicting—policies. So we believe the *Shurtleff* factors offer a more transparent and consistent approach to awarding fees under statutes that otherwise provide little guidance.

[66] *State v. Kropf,* 2015 UT App 223, ¶ 18, 360 P.3d 1.

[67] *Brady,* 2019 UT 16, ¶ 112.

presided over the evidentiary hearing, it was making its decision from a "cold record." Nevertheless, after weighing the parties arguments, the district court held that the equities weighed in favor of denying Mr. Fishler's motion because the case had been "fact-sensitive," "complicated," and did not lack "all merit."

¶64 Our ruling may disturb this decision for several reasons. First, we are remanding for new determinations on every issue raised by Ms. Ragsdale. So although this case will undoubtedly continue to be fact-sensitive and complicated, the outcome on remand may change. This may, in turn, affect whether one of the parties should receive fees following the district court's new ruling—particularly in light of the clarified attorney-fees standard we announce today. In addition, as we discuss below, the district court will need to decide whether to conduct a new evidentiary hearing on remand. If it does, it will no longer be at the "disadvantage" of having to rule on a renewed attorney-fees motion from a cold record. It can instead make a fresh determination based on the observations it gleans from the new evidentiary hearing.

¶65 For these reasons, we vacate the district court's denial of Mr. Fishler's fee request and note that either party may make a new fee request following the district court's final judgment on remand. The district court should apply the standard announced here when determining whether to award fees to either party.

V. On Remand, We Instruct the District Court to Determine Whether This Case Requires a New Evidentiary Hearing

¶66 Our decision to remand each issue raised by the parties prompts the question of whether this case requires a new evidentiary hearing. The judge who presided over the original hearing and denied Ms. Ragsdale's injunction has since retired. The current judge, who ruled on Mr. Fishler's fee request, did so based on the record. On remand, this judge will need to rule anew on whether Mr. Fishler directed his conduct at Ms. Ragsdale, whether his conduct would cause a reasonable person in Ms. Ragsdale's circumstances fear or emotional distress, and whether Ms. Ragsdale's injunction burdens more speech than necessary.

¶67 As the district court recognized in denying Mr. Fishler's fee request, these are "complicated" and "fact-intensive" issues. They may be difficult to address solely from the record. Accordingly, on remand, the district court should decide whether to conduct a new evidentiary hearing. And in making this decision, it should allow the parties to weigh in and brief this issue.

**Conclusion**

¶68 We reverse on each issue raised by Ms. Ragsdale. The district court erred in concluding that Mr. Fishler's conduct was directed only at ECA, which he claims was his subjectively intended target. It erred by failing to determine whether Mr. Fishler's conduct would cause a reasonable person in Ms. Ragsdale's circumstances to suffer fear or emotional distress. And it erred by denying Ms. Ragsdale's injunction on the ground that the First Amendment protects Mr. Fishler's conduct. So we reverse on each of these issues and remand for proceedings consistent with this opinion. In so doing, we also vacate the district court's ruling on Mr. Fishler's fee request and remand for a new attorney-fees determination.

———————