**2024 UT App 183**

## THE UTAH COURT OF APPEALS

MADISON STASZKIEWICZ,
Appellee,
*v.*
TIFFANY N. THOMAS,
Appellant.

Opinion
No. 20230229-CA
Filed December 12, 2024

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 230900048

Lillian M. Reedy, Attorney for Appellant

Kimberley L. Hansen and Amy L. Herrington,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1     The district court entered a civil stalking injunction against Tiffany N. Thomas at Madison Staszkiewicz's request. After a hearing on Thomas's objection to the injunction, the district court kept the stalking injunction in place. Thomas now appeals. For the reasons outlined below, we affirm.

### BACKGROUND

¶2     Staszkiewicz is married to the father (Father) of Thomas's daughter (Daughter). Thomas and Father have had a contentious relationship and have been involved in legal disputes over parent-time and child support for Daughter. In January 2023,

Staszkiewicz filed a petition for a civil stalking injunction against Thomas, alleging that Thomas had (1) abducted her and Father's five-year-old son (Son) from elementary school in August 2022 (the School Incident) and (2) two months later, attempted to hit her car near the elementary school before pulling alongside it and yelling, "Fuck you fuck you, you're dead!!!" (the Driving Incident). The court denied the request.

¶3 The following day, Staszkiewicz filed an amended request for a civil stalking injunction, alleging additional incidents of harassment: "multiple disturbing and harassing texts and emails" from 2015 and an incident in February 2019 when Thomas came to Staszkiewicz's house "unannounced and attempted to break into [the] home" (the Porch Incident). The district court granted the amended request and entered a temporary civil stalking injunction.

¶4 Thomas requested a hearing to challenge the injunction. At the hearing in February 2023, the district court heard testimony from Thomas and Staszkiewicz and received documentary evidence, including text messages, photographs, and a Google map of the streets surrounding the school.

¶5 Regarding the School Incident, Thomas testified she had simply given Son a ride home when it appeared to her that he had been forgotten after school. According to Thomas, she had arrived to pick up Daughter, who was with Son, "waited and waited, and no one showed up to pick him up," so Thomas called Father, who "calmly" told her, "Please drop him off at home, if you don't mind." When the court asked for corroborating evidence of Father's permission, Thomas could produce only a screenshot showing a thirty-four-second phone call to Father. Staszkiewicz, on the other hand, produced texts between Father and Thomas from later that same day in which he told Thomas, "I don't ever want [Son] in your car ever[;] . . . you are not approved to take him from school." Staszkiewicz testified that her neighbor

(Neighbor) who was driving the carpool that day called her "panicking[] because she couldn't find" Son. In a signed statement filed with the court, Neighbor testified that Thomas's claim that she took Son "because she was the 'last car in the parking lot' and 'there were not any kids left at all before' [Son] got in her car . . . was false." Neighbor testified she had been "waiting in [the] regular pick-up area, when class dismissed for the day."

¶6      Regarding the Driving Incident, Thomas denied that it occurred. Thomas testified that although she drove past Staszkiewicz's car during school pickup, she did not veer her car toward Staszkiewicz's in a menacing manner or say anything to her. Staszkiewicz, for her part, testified that Thomas swerved her car out of its lane, accelerated, and came within "[t]hree or four inches" of Staszkiewicz's car before she "backed up to pull directly up to [Staszkiewicz's] window," "screaming profusely" and "threatening [her] life." Staszkiewicz testified that she immediately called the police. The police report, which was attached to the request for the injunction, indicated Staszkiewicz "was crying, at times uncontrollably," while describing the event and "was clearly scared due to the encounter."

¶7      And regarding the Porch Incident, Thomas testified she had received permission from Father to drop off Daughter's valentines but when she knocked on the door, Staszkiewicz "slammed the door in [her] face." For her part, Staszkiewicz clarified she did not know Thomas was coming over and when Staszkiewicz tried to close the door, Thomas "put her foot in the door and pushed the door open."

¶8      At one point in the hearing, the court explained it was "trying to understand what the dynamics may be between [the] parties . . . to see what sparks are lighting the fire between the conduct between these two." The court also clarified it would consider the information from the amended request for a civil

stalking injunction as evidence because it "was signed and delivered under oath." This included what Staszkiewicz described as "multiple disturbing and harassing texts and emails" she received from Thomas in 2015.

¶9 After the hearing, the court denied Thomas's objection to the stalking injunction in a written ruling. In its entirety, the court's ruling states as follows:

> The objection to the stalking injunction came on for hearing on February 16, 2023. Both parties were represented by counsel and both parties admitted exhibits. . . . The [c]ourt determined the testimony [of Staszkiewicz] was credible and that the actions of [Thomas] in taking her minor child from school without her knowledge would cause distress/fear. In addition an attempt to enter into [Staszkiewicz's] home would cause her to fear for her safety, particular[ly] after the incident at the school of driving next to or so close to the car and making the statements listed in the Request. The [c]ourt denies the objection to the stalking injunction, which shall remain in place. No further Order required.

## ISSUES AND STANDARDS OF REVIEW

¶10 Thomas now appeals, challenging the district court's entry of the civil stalking injunction against her. First, she contends the court erred in concluding her alleged acts constitute a course of conduct as required by the statute. "Whether someone has engaged in a course of conduct under the stalking statute is a question of law, which we review for correctness." *Hardy v. Hardy*, 2020 UT App 88, ¶ 4, 467 P.3d 931.

¶11 Second, she contends the district court erred in finding that her conduct would cause a reasonable person to suffer fear or emotional distress. "Whether the course of conduct would cause a reasonable person in a petitioner's circumstances to suffer fear or emotional distress is a question of fact that we review for clear error," but "we review the district court's interpretation of the underlying legal standard for correctness." *Richins v. Weldon*, 2023 UT App 147, ¶ 42, 541 P.3d 274 (cleaned up).

## ANALYSIS

¶12 Under Utah law, stalking occurs when an individual

> intentionally or knowingly . . . engages in a course of conduct directed at a specific individual and knows or should know that the course of conduct would cause a reasonable person (i) to fear for the individual's own safety or the safety of a third individual; or (ii) to suffer emotional distress.

Utah Code § 76-5-106.5(2)(a) (2022).[1] In other words, "the crime of stalking consists of two elements. First, a person must intentionally or knowingly engage in a course of conduct directed at a specific person." *Ragsdale v. Fishler*, 2021 UT 29, ¶ 25, 491 P.3d 835 (cleaned up). "Second, that person must know or should know that the course of conduct would cause a reasonable person to fear for the person's own safety or suffer other emotional distress." *Id.* (cleaned up).

---

1. This statute was amended, effective May 2024. *Compare* Utah Code § 76-5-106.5 (2024) *with id.* (2022). "We therefore cite the version of the statute in effect at the time of the actions giving rise to this appeal." *Calder v. State*, 2022 UT App 67, ¶ 7 n.4, 512 P.3d 485.

### I. Course of Conduct Directed at a Specific Individual

¶13 Thomas argues the trial court erred in concluding that the three incidents forming the basis for the injunction amounted to a "[c]ourse of conduct" as defined by Utah Code section 76-5-106.5(1)(a)(i), which requires "two or more acts directed at or toward a specific individual." Thomas's challenge rests on two grounds that are both legally incorrect under Utah law.

¶14 First, Thomas contends that the trial court erred by not analyzing each of the alleged incidents separately. "In determining whether a person's acts constitute a course of conduct, we do not consider individual acts in a vacuum but, rather, we consider the acts cumulatively in light of all the facts and circumstances." *Harris v. Hunt*, 2024 UT App 117, ¶ 10, 557 P.3d 228 (cleaned up). Thus, "a district court should not consider each act in isolation" but "should consider the course of conduct cumulatively." *Richins v. Weldon*, 2023 UT App 147, ¶ 66, 541 P.3d 274 (cleaned up); *accord Anderson v. Deem*, 2023 UT App 48, ¶ 27, 530 P.3d 945.

¶15 Second, Thomas argues the court erred in finding that her acts amounted to a course of conduct because "[n]one of these occurrences evoke outrage or revulsion." Again, this argument runs counter to Utah law because it fails to distinguish whether Thomas's acts amounted to a course of conduct from whether that course of conduct caused emotional distress. As noted, establishing a course of conduct is the first step in the stalking analysis. *See Ragsdale v. Fishler*, 2021 UT 29, ¶ 25, 491 P.3d 835. "This step should not be conflated or combined with the second part of the analysis, which involves a determination as to whether the course of conduct would cause a reasonable person fear or emotional distress." *Anderson*, 2023 UT App 48, ¶ 26. In other words, "a course of conduct does not necessarily involve threatening behavior . . . . Rather, a course of conduct merely

requires two or more acts directed at or toward a specific individual." *Id.* ¶ 25 (cleaned up).

¶16 Here, the district court's ruling referenced Thomas's three acts directed at Staszkiewicz—the Porch Incident, the School Incident, and the Driving Incident—and correctly considered the incidents cumulatively, rather than in isolation. Thus, the district court properly conducted the first step of the analysis when it found that a course of conduct as defined by the stalking statute existed here.

## II. A Reasonable Person in the Petitioner's Circumstances Fearing for Her Own Safety or Suffering Emotional Distress

¶17 Under the second prong of the stalking statute, we must consider whether the conduct at issue "would cause emotional distress [or fear] to a reasonable person in the petitioner's circumstances." *Richins v. Weldon*, 2023 UT App 147, ¶ 67, 541 P.3d 274 (cleaned up). "To properly apply the stalking statute's objective standard, the district court" "must consider the entire context surrounding [a respondent's] conduct," analyzing the conduct "in light of the specific facts and circumstances of the petitioner's individual case." *Id.* (cleaned up).

¶18 Thomas takes issue with the court's analysis on this second prong by arguing the evidence is insufficient to support the court's findings that Staszkiewicz "was credible" and Thomas's actions "would cause distress/fear."[2] We disagree.

---

2. Thomas also asserts the court should have used a "'sufficiently outrageous and intolerable' . . . standard for emotional distress," but she anchors this argument to a case that applied an outdated stalking statute. *See Allen v. Anger*, 2011 UT App 19, ¶ 16, 248 P.3d 1001, *superseded by statute as stated in State v. Miller*, 2023 UT 3, 527 P.3d 1087. Furthermore, our supreme court has stated that the

(continued…)

¶19 First, "a trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Id.* ¶ 64 (cleaned up). Accordingly, "we give great deference to the trial court and do not lightly disturb its factual findings." *Henshaw v. Henshaw*, 2012 UT App 56, ¶ 10, 271 P.3d 837 (cleaned up). Furthermore, a "reviewing court must give due regard to the trial court's opportunity to judge the credibility of the witnesses." Utah R. Civ. P. 52(a)(4). Such deference is warranted because "trial courts have the benefit of viewing the witnesses firsthand, to assess their demeanor and to consider their testimonies in the context of the proceedings as a whole, making them much better equipped to make credibility determinations." *Richins*, 2023 UT App 147, ¶ 65 (cleaned up).

¶20 Here, the district court found Staszkiewicz more credible than Thomas after it had assessed each party's demeanor and considered their respective testimony in light of the proceedings as a whole. For example, Thomas's testimony about the School Incident was contradicted in two ways. First, she claimed Father gave her permission to drive Son to his house, but the text exchange entered into evidence showed the opposite: Father stated, "I don't ever want my son in your car ever[;] . . . you are not approved to take him from school." Second, Thomas claimed "no one showed up to pick [Son] up," but Neighbor stated she was there in their routine pickup area, waiting for Son. And regarding the Driving Incident, Staszkiewicz's account was supported by the police report in which the officer stated Staszkiewicz "was crying, at times uncontrollably," and "was clearly scared due to the

2008 amendment to the stalking statute "supplants" the "statutory standard to require proof of outrageous and intolerable stalking," making it no longer valid. *Baird v. Baird*, 2014 UT 8, ¶¶ 38–39, 322 P.3d 728. Thus, Thomas's argument in this regard fails.

encounter." Because the district court's credibility finding was not "in conflict with the clear weight of the evidence," *id.* ¶ 64 (cleaned up), we conclude the court's credibility finding was not clearly erroneous.

¶21    Second, we likewise conclude the court did not err in finding that Thomas's course of conduct satisfied the second element of stalking. As noted above, Thomas's conduct must be analyzed "in light of the specific facts and circumstances of [the petitioner's] individual case." *Id.* ¶ 67 (cleaned up). Courts apply this "individualized objective standard" by considering "such factors as the victim's background, the victim's knowledge of and relationship with the [respondent], any history of abuse between the parties, the location of the alleged stalking, and the cumulative effect" of the respondent's conduct. *Id.* (cleaned up). "When assessing these and other relevant factors, however, courts must avoid succumbing to a purely subjective analysis, which is inconsistent with the objective standard's intent to protect against criminalizing conduct that only an unreasonably sensitive or paranoid victim would find harassing." *Baird v. Baird*, 2014 UT 8, ¶ 27, 322 P.3d 728 (cleaned up).

¶22    Here, the district court appropriately analyzed Thomas's conduct in light of the specific facts and circumstances at hand. The court expressly sought "to understand what the dynamics may be between [the] parties . . . to see what sparks are lighting the fire between the conduct between these two," and it considered the cumulative impact of the three incidents in its ruling.

¶23    However, the court did err in stating that "an attempt to enter into [Staszkiewicz's] home would cause her to fear for her safety, particular[ly] *after* the incident at the school of driving next to or so close to the car and making the statements listed" in the petition. (Emphasis added.) The Porch Incident—in which Thomas attempted to enter Staszkiewicz's home—occurred over

three years *before*, not *after*, the Driving Incident. But the question we must answer is whether the error harmed Thomas. *See, e.g., Harris v. Hunt*, 2024 UT App 117, ¶ 17, 557 P.3d 228 (concluding that even if "the court erred by not making specific findings, . . . we deem any such error harmless under the circumstances"); *TKS Co-Pack Mfg., LLC v. Wilson*, 2024 UT App 87, ¶ 113, 552 P.3d 258 (finding "any error on the part of the court here was harmless"). The district court was required to consider the "cumulative effect" of Thomas's course of conduct directed at Staszkiewicz in determining whether it was "enough to cause fear or emotional distress." *Anderson v. Deem*, 2023 UT App 48, ¶ 31, 530 P.3d 945. So, regardless of the particular order in which these two events occurred, the court had to consider the impact of both the Porch Incident and the Driving Incident. And the evidence—police reports, Staszkiewicz's testimony, Father's texts, and Neighbor's signed statement—supported the court's finding that Thomas's actions "would cause [Staszkiewicz] to fear for her safety." We therefore conclude that the court's chronological error was harmless.[3]

---

3. Staszkiewicz asserts that Thomas's appeal is frivolous and requests an award of attorney fees pursuant to rule 33 of the Utah Rules of Appellate Procedure. Utah R. App. P. 33(a); *see also id.* R. 33(b) ("[A] frivolous appeal is . . . one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law."). "The sanction for bringing a frivolous appeal is applied only in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Marroquin v. Marroquin*, 2019 UT App 38, ¶ 36, 440 P.3d 757 (cleaned up). While Thomas's arguments were unpersuasive because they were based on a legally incorrect standard, we do not view this error to be so "egregious" that it warrants sanctions. We therefore decline to award attorney fees.

CONCLUSION

¶24    In light of the facts and circumstances of this matter, we find no reversible error by the district court in its ruling that Thomas's actions constituted a course of conduct that would cause a reasonable person in Staszkiewicz's circumstances to fear for her own safety. We therefore affirm the district court's ruling and reject Thomas's challenge to the civil stalking injunction.

─────────