2014 UT App 122

**Jaime RAMIREZ–GIL, Petitioner and Appellant,**

v.

**STATE of Utah, Respondent and Appellee.**

**No. 20130201–CA.**

Court of Appeals of Utah.

May 30, 2014.

---

Lance C. Starr, for Appellant.

Sean D. Reyes and Andrew F. Peterson, for Appellee.

Senior Judge RUSSELL W. BENCH authored this Opinion, in which Judges J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.[1]

Opinion

BENCH, Senior Judge:

¶ 1 Jaime Ramirez–Gil appeals the district court's summary judgment ruling denying his petition for post-conviction relief. We affirm.

BACKGROUND

¶ 2 Petitioner was a legal permanent resident of the United States and had been residing in this country since emigrating from Mexico in 1969. In 2012, Petitioner was taken into custody for stalking and vari-

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

ous protective order violations. He agreed to a plea deal and entered a guilty plea to one count of third-degree-felony stalking. *See generally* Utah Code Ann. § 76–5–106.5(2), (3) (LexisNexis 2012). In exchange, the State dismissed two additional third-degree-felony stalking counts and ten class-A-misdemeanor protective order violations. *See generally id.* § 76–5–108 (Supp.2013) (protective order violations). Petitioner received a suspended prison sentence, was placed on probation, and was sentenced to serve seventy-four days in jail of which he was credited seventy-two days for time already served.

¶ 3 On the day he was released from jail, Immigration and Customs Enforcement agents took Petitioner into custody, whereupon an immigration court ordered his deportation in light of his conviction of a third-degree felony. Prior to his removal from the United States, Petitioner filed a petition for post-conviction relief, alleging that his trial counsel rendered constitutionally ineffective assistance by failing to inform him of the immigration consequences of his plea agreement.

¶ 4 The State moved for summary judgment, which the post-conviction court granted. The court explained its ruling, stating,

> [T]here remains no genuine issue of material fact relating to the constitutional effectiveness of trial counsel because Petitioner cannot establish prejudice. He did actually know of the deportation consequences of his plea because it was set out clearly in the written plea form, which he acknowledged reviewing with his attorney. In addition, Petitioner has not even alleged an objectively rational basis for proceeding to trial, let alone offered evidence of such. . . . [And] Petitioner has failed to offer any evidence that would, if proved, entitle him to judgment as a matter of law.

Petitioner appeals the court's summary judgment order.

**2.** Petitioner also argues that the post-conviction court applied the wrong standard in reviewing his ineffectiveness claim. Specifically, he argues that "the court failed to realize ... that a noncitizen's valuation of risk when deciding whether to proceed to trial is completely different from

### ISSUE AND STANDARD OF REVIEW

¶ 5 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "The propriety of a grant or denial of summary judgment is a question of law, which we review for correctness. In doing so, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Glenn v. Reese,* 2009 UT 80, ¶ 6, 225 P.3d 185 (citations and internal quotation marks omitted).

### ANALYSIS

¶ 6 The post-conviction court based its summary judgment ruling on its determination that Petitioner could not demonstrate that he was prejudiced by the alleged ineffective assistance of his counsel. Petitioner argues that questions of fact should have precluded summary judgment.[2]

¶ 7 A two-part test applies to any ineffectiveness claim. This test requires a defendant to "first demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment." *State v. Litherland,* 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."). With respect to noncitizen defendants, "the Sixth Amendment right to effective assistance of counsel" also requires counsel to "inform her client whether his plea carries a risk of deportation." *Padilla v. Kentucky,* 559 U.S. 356, 373–74, 130 S.Ct. 1473, 176 L.Ed.2d 284

the framework utilized by citizen defendants." *See infra* ¶¶ 12–13. We are not persuaded that the post-conviction court overlooked or undervalued Petitioner's noncitizen status in ruling on the State's motion for summary judgment.

(2010) ("The severity of deportation—the equivalent of banishment or exile—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." (citation and internal quotation marks omitted)); *accord Jelashovic v. State,* 2012 UT App 220, ¶ 7, 285 P.3d 14.

¶ 8 The second part of the ineffective assistance test requires that a defendant "show that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *Litherland,* 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052). In order to demonstrate prejudice on this type of claim, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *see Hill,* 474 U.S. at 59, 106 S.Ct. 366, and that such a decision "would have been rational under the circumstances," *see Padilla,* 559 U.S. at 372, 130 S.Ct. 1473; *accord State v. Ruiz,* 2013 UT App 274, ¶ 23 n. 5, 316 P.3d 984. "[W]e look to the factual circumstances surrounding the plea to determine whether [a defendant] would have proceeded to trial." *United States v. Clingman,* 288 F.3d 1183, 1186 (10th Cir.2002) (citation and internal quotation marks omitted). Furthermore, "proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Fernandez v. Cook,* 870 P.2d 870, 877 & n. 40 (Utah 1993) (collecting cases).

## I. The Written Plea Agreement Clearly Communicated the Immigration Risks.

¶ 9 Petitioner's argument relies on his assertion that he was not adequately informed of the immigration risks associated with entering a guilty plea to a third-degree-felony stalking charge. By signing the written plea agreement, Petitioner acknowledged that he reviewed the written plea form with his trial counsel. He also acknowledges that the written plea form contains the following statement,

I understand that if I am not a United States citizen, my plea(s) today may, or even will, subject me to deportation under United States immigration laws and regulations, or otherwise adversely affect my immigration status, which may include permanently barring my re-entry into the United States. I understand that if I have questions about the effect of my plea on my immigration status, I should consult with an immigration attorney.

¶ 10 Petitioner nonetheless contends that he was unaware that in his case, deportation was "presumptively mandatory" in light of the particular offense to which he pleaded. In the affidavit he filed with his petition for post-conviction relief, Petitioner stated, "[H]ad I known, or had someone told me, that by accepting the plea offer it was a 100% certainty that I would be deported I would never have accepted that offer." This argument is unpersuasive, particularly in light of the language in the written plea form explaining to him that his plea "may, or even will, subject [him] to deportation" or could "permanently bar[his] re-entry into the United States." Further, Petitioner's statement in his appellate brief that he "may have understood that he could be subject to deportation" undermines his ineffective assistance argument, regardless of whether he understood the full spectrum of possible immigration consequences, because "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *See Padilla,* 559 U.S. at 369, 130 S.Ct. 1473; *see also Jelashovic,* 2012 UT App 220, ¶ 9, 285 P.3d 14. Between the statements in the written plea form explaining the deportation consequences of Petitioner's plea and Petitioner's signature on that form confirming that trial counsel reviewed the plea with him, Petitioner cannot demonstrate that counsel performed deficiently by failing to advise him that his plea could affect his immigration status.

## II. Petitioner Fails To Demonstrate Prejudice.

¶ 11 Even assuming that trial counsel performed deficiently here, Petitioner must also demonstrate that he was prejudiced by counsel's performance. *See Archuleta v.*

*Galetka,* 2011 UT 73, ¶ 41, 267 P.3d 232. Petitioner explained in his affidavit submitted with his petition for post-conviction relief that he moved to the United States in 1969, when he was three years old, and that "[a]ll of [his] family, friends, and [in] short, [his] whole life are here." He stated in the affidavit,

> Because of that, I want this court to know that had I known, or had someone told me, that by accepting the plea offer it was a 100% certainty that I would be deported I would never have accepted that offer. I would have fought for a different resolution or, if nothing else was available, I would have taken the case to trial regardless of my chances of winning. If the option was between risking a whole bunch of convictions versus being sent back to a country I do not know and don't even remember, I would have fought.

Petitioner alleges that had he been fully informed of the immigration consequences of his plea, he would have pressed his trial counsel to continue plea negotiations to secure a deal that would not "guarantee[ ] his deportation and strip[ ] him of any right to contest it"; insisted on proceeding to trial, even though he may have had "absolutely no hope or expectation of actually being acquitted," in order to " 'tease out' evidence at trial that [could] later be used to mitigate the immigration consequences of his convictions"; or otherwise used a trial to "go[ ] out swinging."

¶ 12 We agree with the post-conviction court's observation that Petitioner's arguments are "suppositions" and are "not based on any evidence from which the [c]ourt may draw inferences in Petitioner's favor." *See Fernandez,* 870 P.2d at 877 (noting that speculation is insufficient to demonstrate prejudice in an ineffective assistance of counsel argument). Petitioner's assertion that trial counsel could have negotiated alternative plea deals is based on little more than his assumption that the State's willingness to reach a plea deal in the first place demonstrates its willingness to negotiate alternative deals that would be more favorable to Petitioner. We are not persuaded by this claim and do not otherwise read *Padilla* as imposing on trial counsel a general requirement to secure alternative plea bargains in order to render effective assistance. We also agree with the State's assertion that "the hypothetical existence of a nuanced immigration strategy" at trial does not "create a rational incentive to proceed to trial in the absence of ... concrete and obtainable [trial] objectives." Last, Petitioner's suggestion that a desire to "go out swinging" provides a rational reason for rejecting a favorable plea offer for either a citizen or a noncitizen defendant is also without merit.

¶ 13 Although the allegation in Petitioner's affidavit "that he would have insisted on trial but for his trial counsel's errors" is a "necessary" component of his ineffective assistance argument, it "is ultimately insufficient to entitle him to relief." *See United States v. Clingman,* 288 F.3d 1183, 1186 (10th Cir. 2002); *see also State v. Walker,* 2013 UT App 198, ¶ 42, 308 P.3d 573; *Rhinehart v. State,* 2012 UT App 322, ¶ 6, 290 P.3d 921. As recognized by the post-conviction court, had Petitioner's case proceeded to trial, "his conviction on all counts was virtually assured" because "the texts, [the] voice messages, and the protective order itself all would have been presented at trial, and because Petitioner has offered no reason to suggest that [this] evidence lacked credibility, or that he had any defense or theory that would have negated the[ ] damning effects [of this evidence]." Petitioner did not have any realistic options that could avoid deportation and we have no reason to believe that Petitioner would have fared any better in immigration court had he been convicted of all thirteen charges, rather than the one to which he pleaded. In contrast, by accepting the plea bargain and entering a guilty plea to one count of third-degree-felony stalking, Petitioner avoided conviction on two additional third-degree-felony charges and ten misdemeanor charges, which likely would have resulted in a significant period of incarceration, followed by deportation. Accordingly, even if we assume that Petitioner's counsel performed deficiently by failing to better inform Petitioner of the immigration consequences associated with his plea agreement, Petitioner has failed to demonstrate that he was prejudiced by counsel's deficient performance.

## CONCLUSION

¶ 14 Petitioner was adequately informed of the immigration consequences associated with his plea, as evidenced by his signature on the written plea agreement acknowledging that he had reviewed the plea agreement with his trial counsel. Even if Petitioner could establish that his trial counsel performed deficiently by failing to better inform him of the immigration consequences, he has not demonstrated that he was prejudiced by counsel's performance. Petitioner based his ineffective assistance of counsel arguments on speculation and failed to provide evidence sufficient to withstand summary judgment. Accordingly, we affirm the post-conviction court's ruling granting the State's motion for summary judgment.