**2018 UT App 45**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
REYNALDO PAREDES,
Appellant.

Opinion
No. 20160508-CA
Filed March 22, 2018

Second District Court, Ogden Department
The Honorable Michael D. DiReda
No. 151901382

German T. Flores, Attorney for Appellant

Sean D. Reyes and Thomas B. Brunker, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES DAVID N. MORTENSEN and DIANA HAGEN
concurred.

CHRISTIANSEN, Judge:

¶1 Defendant Reynaldo Paredes, a lawful permanent resident of the United States, appeals from the district court's denial of his motion to withdraw his guilty plea. According to Defendant, his counsel had not adequately informed him of the immigration consequences of entering that plea, thereby failing to provide him with effective representation. The district court denied the withdrawal motion after finding that Defendant had been adequately informed. We conclude that Defendant has not demonstrated that the district court clearly erred or otherwise abused its discretion in denying his withdrawal motion. We therefore affirm.

BACKGROUND

¶2      In 2015, a 23-year-old woman reported to police that Defendant had grabbed her breasts both over and under her clothing and then exposed his penis to her. This incident was witnessed by the woman's 12-year-old cousin. Defendant was arrested and charged with forcible sexual abuse, a second-degree felony; lewdness, a class B misdemeanor; and intoxication, a class C misdemeanor. Defendant admitted he had consumed alcohol that day, but he denied exposing himself to the woman and claimed that the touching was consensual.

¶3      Defendant and the State agreed that he would plead guilty to attempted forcible sexual abuse, a third-degree felony, in exchange for the dismissal of the other charges. A plea agreement form was prepared, which included a clause pertaining to immigration:

> **DEPORTATION/IMMIGRATION**: I understand that if I am not a United States citizen, my plea(s) today may, or even will, subject me to deportation under United States immigration laws and regulations, or otherwise adversely affect my immigration status, which may include permanently barring my re-entry into the United States. I understand that if I have questions about the effect of my plea on my immigration status, I should consult with an immigration attorney.

The immigration clause, like the other sections of the plea agreement, was immediately followed by a Spanish translation in bold text.

¶4      Because Defendant spoke Spanish, a court-certified interpreter was utilized during the plea hearing. The district court asked Defendant if he had read through, reviewed, and understood the plea agreement:

> THE JUDGE: Mr. Paredes, did you review that plea agreement? Did you read through that document?
> THE DEFENDANT: Si.
> INTERPRETER: Yes.
> [Defendant's attorney]: And it's, this is written in Spanish language, his native language.
> THE JUDGE: Thank you. Did you understand everything in that document?
> THE DEFENDANT: Si.
> INTERPRETER: Yes.

Defendant then signed the plea agreement. After finding that Defendant's guilty plea was knowing and voluntary, the court accepted the plea and dismissed the other charges.

¶5 Prior to sentencing, and through new counsel, Defendant moved to withdraw his guilty plea. He claimed that his previous counsel had not advised him that he could be deported due to his guilty plea. Defendant asserted in an affidavit filed with his motion that, had he known he "would automatically be removed from my family and be deported without the ability to lawfully return to the United States," he "would not have entered [a] guilty plea" and would have instead allowed his case to proceed to trial.

¶6 The State filed a memorandum in opposition to the withdrawal motion, and Defendant's new counsel filed a reply to the opposition. In the reply memorandum, Defendant's new counsel claimed for the first time that Defendant was illiterate and had therefore been totally reliant on his prior counsel to explain the plea agreement to him. Attached to the reply brief was an affidavit from Defendant's sister in which she claimed "personal knowledge that [Defendant] is not literate because he did not attend regular school as a child."

¶7 After oral arguments, the district court denied Defendant's motion to withdraw his plea. The court ruled that

the language in the written plea agreement adequately informed Defendant of the risk of deportation, that Defendant "knowingly and voluntarily entered the plea agreement," and that the plea colloquy "was in accordance with the provisions of Rule 11 of the Utah Rules of Criminal Procedure." The court also struck Defendant's sister's affidavit, stating it was "contrary to [Defendant's] representations at the time he signed the plea agreement and . . . nonresponsive to the state's opposition memorandum."

## ISSUE AND STANDARD OF REVIEW

¶8      On appeal, Defendant contends that the district court erred in denying his motion to withdraw the guilty plea. "We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion[.]" *State v. Stolfus*, 2014 UT App 65, ¶ 2, 322 P.3d 1190 (citation and internal quotation marks omitted). We "will disturb the findings of fact made by the district court in resolving that motion to withdraw a guilty plea only if they are clearly erroneous." *Id.* (citation and internal quotation marks omitted).

## ANALYSIS

¶9      As with all critical stages of trial, a criminal defendant is entitled to "the effective assistance of competent counsel" before making the momentous decision to plead guilty. *See Padilla v. Kentucky*, 559 U.S. 356, 364, 366 (2010) (citation and internal quotation marks omitted). To demonstrate that counsel's assistance was constitutionally ineffective, a defendant must satisfy the two-part test set forth in *Strickland v. Washington*; i.e., the defendant must show that "counsel's representation fell below an objective standard of reasonableness," *id.* at 366 (citation and internal quotation marks omitted), and that the defendant suffered resulting prejudice, *id.* at 369. *See also*

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92.

¶10    "It is quintessentially the duty of counsel to provide [a defendant] with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the *Strickland* analysis." *Padilla*, 559 U.S. at 371 (citation and internal quotation marks omitted). But even if a defendant can show that counsel failed to provide such advice, the defendant must still show resulting prejudice. *Id.* at 372.

¶11    Here, Defendant asserts that, because he is allegedly illiterate, he relied entirely on the advice given to him by counsel and that counsel failed to inform him of the immigration consequences associated with pleading guilty to a felony charge. Defendant argues that counsel's failure to "advise him of the immigration consequences—including the real risk of deportation—of his guilty plea constitutes ineffective assistance of counsel because it falls below an objective standard of reasonable professional behavior for any criminal defense attorney."

¶12    The State responds that Defendant has "failed to prove either deficient performance or prejudice from counsel's advice in the plea process." The State notes that Defendant signed a plea agreement which advised him that deportation was a possible consequence of pleading guily. The State points out that the immigration clause in Defendant's plea agreement used the same language as the plea agreement at issue in *Ramirez-Gil v. State*, 2014 UT App 122, 327 P.3d 1228. In *Ramirez-Gil*, this court held that the written plea agreement clearly communicated the immigration risks of a guilty plea for a non-citizen and that, by signing it, the defendant had confirmed that counsel had reviewed the agreement with him. *Id.* ¶¶ 9–10. On this same basis, the State argues that Defendant has failed to demonstrate deficient performance because he too signed a plea agreement

that clearly communicated the immigration risks of pleading guilty.

¶13   We note that the basis for Defendant's challenge on appeal is his alleged illiteracy. He asserts that he was unable to read the plea agreement himself and that his counsel failed to otherwise inform him of the immigration risks. Thus, in his view, we should afford little weight to his signature on the plea agreement because he did not understand the contents of that plea agreement.[1]

¶14   But this argument runs headlong into the district court's findings regarding Defendant's "alleged lack of understanding of the plea agreement or potential immigration consequences." Specifically, the court found that Defendant had verbally informed the court that he had read through the agreement containing the immigration clause and had understood everything contained in it. In making this finding, the court noted that there was nothing in the record up to the point of the plea hearing "that indicated [Defendant] was illiterate" or

---

1. Defendant does not argue that a written plea agreement form is insufficient to fulfill counsel's *Padilla* obligations. *See Padilla v. Kentucky*, 559 U.S. 356, 369 (2010) (explaining that counsel has no duty beyond ensuring that his or her "noncitizen client [knows] that pending criminal charges may carry a risk of adverse immigration consequences"). We therefore do not express an opinion as to whether counsel has an independent duty to inform his or her client of likely immigration consequences when the client has already been informed of the existence of such consequences through a written plea agreement confirmed on the record in open court. *But see Ramirez-Gil v. State*, 2014 UT App 122, ¶¶ 9–10, 327 P.3d 1228 (intimating that a written plea agreement with an identical immigration-consequences clause satisfied counsel's *Padilla* burden).

otherwise "unable to either read or understand" the proceedings. The court reviewed the audio record of the plea hearing and found that Defendant's answers "were tendered without hesitation," and that he did not demonstrate "confusion, hesitation, or frustration regarding the plea." The court further found that Defendant's answers regarding his understanding of the plea agreement were "clear, unequivocal, and appropriate."

¶15   On appeal, Defendant maintains that he cannot read and therefore could not have understood the written plea agreement. But he does not explain why we should set aside the district court's findings to the contrary. *See State v. Stolfus*, 2014 UT App 65, ¶ 2, 322 P.3d 1190 (explaining that a district court's findings made in resolving a motion to withdraw a guilty plea may only be set aside if clearly erroneous). Nor is there any obvious basis for doing so, especially where Defendant's own affidavit lacks any mention of illiteracy and Defendant raised a claim of illiteracy through his sister and only in his reply to the State's opposition to his withdrawal motion. Moreover, Defendant did not raise his alleged illiteracy when asked in open court whether he had read the plea statement. *See supra* ¶ 4. We therefore accept the district court's finding that Defendant's claim of illiteracy is "contrary to [his] representations at the time he signed the plea agreement and entered his plea." And because we are bound by the district court's finding that Defendant had not proven his illiteracy, we presume the validity of Defendant's statement to the district court that he had read the plea agreement.

¶16   We next consider whether the plea agreement appropriately conveyed to Defendant the immigration consequences of his plea. In *Ramirez-Gil*, this court considered an immigration-consequences clause with the same wording as the one in the plea agreement Defendant reviewed and signed. *See v. Ramirez-Gil*, 2014 UT App 122, ¶ 9. The petitioner argued that the written plea agreement had not adequately informed him of the

possible immigration consequences of pleading guilty. *Id.* We held that, "[b]etween the statements in the written plea form explaining the deportation consequences of Petitioner's plea and Petitioner's signature on that form confirming that trial counsel reviewed the plea with him, Petitioner cannot demonstrate that counsel performed deficiently by failing to advise him that his plea could affect his immigration status." *Id.* ¶ 10. It follows that, because the clause was adequate to communicate the consequences to the petition in *Ramirez-Gil*, it was likewise adequate to communicate the same consequences to Defendant.

¶17 Before signing the agreement, which was written in both English and Spanish, Defendant assured the district court that he had read it and understood everything in it. This assurance necessarily encompassed the immigration-consequences clause, and the wording of that clause has previously been upheld as adequate. Defendant's affirmative answers to the court and his signature on the plea agreement therefore demonstrate that he was informed of the immigration consequences of pleading guilty. *See id.* ¶¶ 9–10. And because Defendant has not shown that he lacked actual knowledge of the possible immigration consequences, he cannot show prejudice resulting from his counsel's failure[2] to separately advise him of those consequences. *See Padilla*, 559 U.S. at 364, 366, 369.

¶18 Defendant has not demonstrated that he lacked knowledge of the immigration consequences of his guilty plea at the time he entered it. We therefore conclude that the district court did not abuse its discretion by denying Defendant's motion to withdraw the plea.

¶19 Affirmed.

———————

2. *See supra* ¶ 13 note 1.