**2022 UT App 67**

## THE UTAH COURT OF APPEALS

JASON SCOTT CALDER,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20200456-CA
Filed May 26, 2022

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 190400195

Nathan E. Burdsal and Hutch U. Fale,
Attorneys for Appellant

Sean D. Reyes and Erin Riley,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
JILL M. POHLMAN and RYAN D. TENNEY concurred.

HARRIS, Judge:

¶1     Jason Scott Calder, a therapist in his forties, pled guilty to various offenses resulting from sexual conduct that he engaged in with a sixteen-year-old client. Later, Calder filed a petition for post-conviction relief, claiming that his convictions were the result of ineffective assistance of counsel and that they violated various other constitutional rights. The district court dismissed Calder's petition on summary judgment, concluding that Calder's attorney had not rendered ineffective assistance and that his other constitutional challenges were procedurally barred. Calder now appeals, and we affirm.

BACKGROUND[1]

¶2      Calder was employed as a therapist at a facility that described itself as a "residential treatment center and boarding school for teenage girls." In March 2017, when Calder was forty-one years old, he began counseling sixteen-year-old Evelyn,[2] whose parents specifically asked him to focus on "her low self-esteem and her sexually addictive behaviors." In one counseling session, Evelyn told Calder that she was sexually attracted to him; Calder told Evelyn that the attraction was mutual, but he stated that he "could look but not touch."

¶3      In later sessions, after Evelyn—apparently with Calder's encouragement—showed Calder her breasts, Calder crossed his "boundary" and began to touch Evelyn both over and under her clothing. Evelyn later recounted that, over time, the sessions "got more and more physical" and involved "less and less therapy." Soon, Calder and Evelyn were performing oral sex on each other, an event that Calder estimated happened "9 to 10 times, maybe more." Calder also brought a "vibrator" to the sessions, and on several occasions inserted it or his fingers into Evelyn's vagina. During one of their last "counseling" sessions, while on a walk in a secluded area, Calder and Evelyn had sexual intercourse. At some point during this time, Calder learned that Evelyn had written about their activity in her journal, and Calder instructed her to blot out that information with a marker.

¶4      After details about his conduct came to light, Calder was terminated from his position, and the State charged Calder with seventeen crimes: one count of rape, five counts of object rape, five

---

1. "When reviewing a grant of summary judgment, we recite the disputed facts in a light most favorable to the nonmoving party." *Bryant v. State*, 2021 UT App 30, n.2, 484 P.3d 440 (quotation simplified).

2. A pseudonym.

counts of forcible sodomy, five counts of forcible sexual abuse, and one count of obstructing justice.

¶5     Early in the proceedings, only about five weeks after charges were filed, and on the advice of his attorney (Plea Counsel), Calder pled guilty to five crimes: one count of rape, one count of object rape, one count of forcible sodomy, one count of forcible sexual abuse, and one count of obstructing justice. As part of the plea agreement, Calder admitted that he had committed the five crimes to which he pled guilty, including admitting that he had "sexual intercourse with another person and did not have [her] legal consent" because he occupied a "position of special trust." Also as part of the plea agreement, the State dismissed the other twelve counts. Calder was later sentenced to prison.

¶6     Calder did not file a motion to withdraw his guilty plea, nor did he file a direct appeal.[3] Instead, he later filed a petition for post-conviction relief pursuant to the Post-Conviction Remedies Act (PCRA), *see* Utah Code Ann. §§ 78B-9-101 to -110 (LexisNexis 2018 & Supp. 2021), and rule 65C of the Utah Rules of Civil Procedure. In the memorandum supporting his petition, Calder requested that his convictions be vacated, alleging that Plea Counsel had rendered ineffective assistance and that he had been denied various other constitutional protections.

¶7     In the section of his petition addressing his ineffective assistance claims, Calder argued that—at least regarding his sex offenses—he had been charged under the wrong statute. In

---

3. By mentioning the fact that Calder did not file a direct appeal of his convictions, we do not mean to imply that the decision to forgo a direct appeal was an unreasonable one. *See* Utah Code Ann. § 77-13-6(2)(c) (LexisNexis 2017) (stating that "[a]ny challenge to a guilty plea not made" before sentencing "shall be pursued under" the PCRA); *see also State v. Badikyan*, 2020 UT 3, ¶ 17, 459 P.3d 967 (stating that "the Plea Withdrawal Statute cuts off a defendant's right to a direct appeal once sentencing is announced" (quotation simplified)).

particular, he asserted that, instead of facing charges for rape, forcible sodomy, and forcible sexual abuse—first- and second-degree felonies—he should have been charged with third-degree felonies for engaging in "unlawful sexual conduct with a 16- or 17-year-old," *see* Utah Code Ann. § 76-5-401.2 (LexisNexis 2017) (hereinafter referred to as "the USC Statute"),[4] and that Plea Counsel rendered ineffective assistance by failing to advise him of the potential applicability of the USC Statute. Calder asserted that, had Plea Counsel done so, he "would not have [pled] guilty and would have insisted on going to trial."

¶8      In a separate section of his petition, Calder asserted that his sentence "denied him equal protection of the law," and that the statutes under which he was sentenced were "unconstitutionally vague." Regarding equal protection, Calder argued that his constitutional rights were violated because he "was charged with significantly greater crimes than similarly situated individuals over the last five years." Regarding vagueness, Calder asserted that the statutory scheme was vague because his conduct qualified as criminal under more than one statute, and he argued that, in such a situation, he should have been convicted and sentenced under the more lenient statute. In support of these constitutional claims, Calder submitted an affidavit in which he stated that, "[b]efore [he] pled guilty, [he] asked [Plea Counsel] to investigate" similar cases in which individuals had been charged under the USC Statute rather than under the more serious sex offense statutes. But Calder alleged his constitutional claims as direct claims—that is, nowhere in his petition did Calder assert that Plea Counsel was ineffective for not bringing these constitutional claims prior to entry of his guilty plea.

¶9      The State filed a motion for summary judgment, asking the district court to deny Calder's petition in its entirety. In its motion,

---

4. This section of the Utah Code has been materially amended in the time since Calder entered his guilty pleas. We therefore cite the version of the statute in effect at the time of the actions giving rise to this appeal.

the State argued that Plea Counsel had not rendered ineffective assistance by failing to inform and advise Calder regarding the USC Statute because it was by its own terms inapplicable, and because Calder's actions "amounted to rape, object rape, forcible sodomy, and forcible sexual abuse." The State further argued that Calder's other constitutional claims—stated as direct claims— were procedurally barred under the PCRA because they could have been raised in the previous case, but were not.

¶10    After oral argument, the district court granted the State's motion. In its ruling, the court concluded, among other things, that Plea Counsel was not constitutionally ineffective for advising Calder to plead guilty. Specifically, the court determined that Calder's plea agreement—pleading guilty to five counts in exchange for the dismissal of twelve—was favorable and that Calder's argument that he should have instead been charged under the USC Statute was "without merit." The court also ruled that Calder's other constitutional claims were procedurally barred. In so ruling, the court determined that, because Calder acknowledged that he had been aware, during the underlying criminal case, of similarly situated individuals who had been charged under the USC Statute rather than the more serious statutes, he "had the information at hand—before he [pled] guilty—to levy a constitutional challenge based upon vagueness, Equal Protection, or Due Process." In light of its summary judgment ruling, the court dismissed Calder's PCRA petition.

ISSUE AND STANDARD OF REVIEW

¶11    Calder now appeals the district court's order dismissing his petition on summary judgment. "A [post-conviction] court should grant summary judgment only when, viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Patterson v. State*, 2021 UT 52, ¶ 27, 504 P.3d 92 (quotation simplified). "We review a post-conviction court's grant of

summary judgment for correctness, granting no deference to the lower court." *Bryant v. State*, 2021 UT App 30, ¶ 9, 484 P.3d 440 (quotation simplified).

ANALYSIS

¶12 The PCRA offers a "remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies, including a direct appeal." Utah Code Ann. § 78B-9-102(1)(a) (LexisNexis 2018). A PCRA petitioner may raise claims asserting that "the conviction or sentence" was obtained or imposed in an unconstitutional manner; these claims may include claims for ineffective assistance of counsel. *Id.* § 78B-9-104(1)(a), (b), (d). A petitioner may not, however, bring claims under the PCRA that "could have been but [were] not raised at trial or on appeal," unless "the failure to raise that ground was due to ineffective assistance of counsel." *Id.* § 78B-9-106(1)(c), (3)(a). As noted, Calder brought a petition challenging his conviction and sentence under the PCRA, and the district court dismissed that petition on summary judgment.

¶13 Calder challenges the court's summary judgment order and, in connection with that challenge, he asks us to consider two issues. First, he asserts that the court erred when it concluded, as a matter of law and undisputed fact, that Plea Counsel did not render constitutionally ineffective assistance. Second, he argues that the court erred when it concluded that his other constitutional claims were procedurally barred under the PCRA. We address Calder's arguments in turn.

I. Ineffective Assistance of Counsel

¶14 In his PCRA petition, Calder asserted that Plea Counsel rendered ineffective assistance. Specifically, he alleged that Plea Counsel "failed to provide significant legal advice to him" regarding the potential applicability of the USC Statute, which— if applicable—would have resulted in convictions for third-

degree felonies rather than more serious offenses. In addition, Calder claimed that, if Plea Counsel had better informed him about the USC Statute, he "would not have [pled] guilty and would have insisted on going to trial." And he continues to advance that same argument on appeal, asserting in his brief that he "would have never accepted a guilty plea if [Plea Counsel] had simply explained the applicability of" the USC Statute.

¶15 We begin our analysis with a general discussion of the USC Statute, followed by a more specific discussion of a statutory conundrum Calder identifies. Thereafter, we turn to the merits of Calder's claim that the court erred by denying his ineffective assistance claim on summary judgment.

A. The USC Statute

¶16 The USC Statute's basic aim—to criminalize, as no higher than third-degree felonies, "unlawful sexual conduct with" sixteen- and seventeen-year-olds, *see* Utah Code Ann. § 76-5-401.2(2)(a), (4), (5) (LexisNexis 2017)—is straightforward, but the statute itself is quite complex, especially in the way it interacts with other sex offense statutes. It was amended in 2018, but at the time of Calder's 2017 sexual activity with Evelyn, the USC Statute defined "sexual conduct" as one of four things:

> (1) "sexual intercourse";
>
> (2) "any sexual act . . . involving the genitals of one person and the mouth or anus of another person";
>
> (3) causing "the penetration, however slight, of the genital or anal opening . . . by any foreign object, substance, instrument, or device . . . with the intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person"; and
>
> (4) touching "the anus, buttocks or any part of the genitals . . . or touch[ing] the breast of a female . . . ,

or otherwise tak[ing] indecent liberties . . . , or caus[ing] a minor to take indecent liberties with the actor or another person, with the intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person."

*Id.* § 76-5-401.2(b). Notably, these are the same definitions, at least regarding the particulars of the sexual conduct, that are used in the statutes criminalizing rape, forcible sodomy, object rape, and forcible sexual abuse. *See id.* § 76-5-402(1) (rape); *id.* § 76-5-403(1) (forcible sodomy); *id.* § 76-5-402.2(1) (object rape); *id.* § 76-5-404(1) (forcible sexual abuse). The USC Statute therefore criminalizes the same physical acts as Utah's statutes regarding rape, forcible sodomy, object rape, and forcible sexual abuse. The main difference between the USC Statute and the more serious sex offense statutes is that the USC Statute does not require the State to prove nonconsent, while the more serious statutes all require the State to prove that the conduct in question occurred "without the victim's consent." *See, e.g., id.* § 76-5-402(1) (defining "rape" as "sexual intercourse with another person without the victim's consent"). Thus, the USC Statute criminalizes—but as no higher than a third-degree felony—even apparently consensual sexual conduct in certain circumstances.

¶17    For the USC Statute to apply, however, certain conditions must be present, three of which are notable here. First, the sexual conduct must involve a particular type of "minor," a term the USC Statute defines as "a person who is 16 years of age or older, but younger than 18 years of age, at the time [of] the sexual conduct" in question. *Id.* § 76-5-401.2(1). Evelyn was sixteen years old at the time of the relevant sexual conduct, and therefore this requirement is met.

¶18    Second, the other party involved in the sexual conduct must meet at least one of three criteria. That person must be either (a) ten or more years older than the minor; (b) between seven and nine years older than the minor and must know or reasonably

should know the minor's age; or (c) a person who, regardless of age difference, "holds a relationship of special trust as an adult teacher, employee, or volunteer, as described in" Utah's sexual abuse of a child statute. *See id.* § 76-5-401.2(2)(a) (referring to Utah Code Ann. § 76-5-404.1(1)(c)(xix)). The parties both agree—as discussed later, *infra* ¶¶ 22–23 and notes 5–6—that Calder fits within the third criterion (an employee holding a position of special trust), although they take different positions with regard to the basis for and implications of that. Additionally, there is no question that Calder fits within the first criterion, because he is more than ten years older than Evelyn. Therefore, this requirement is also met.

¶19 Third, the USC Statute applies only "under circumstances not amounting to" rape, forcible sodomy, object rape, or forcible sexual abuse. *See id.* § 76-5-401.2(2)(a), (3). Thus, if the State can prove nonconsent, then the conduct meets the requirements of the more serious sex offense statutes, and by definition does not fall within the ambit of the USC Statute. Prosecutors who believe they can prove nonconsent may charge a defendant—whose conduct otherwise fits within the USC Statute—under the more serious statutes, and may view the USC Statute as providing an avenue for conviction of a lesser-included offense in the event the factfinder concludes that the State has failed to prove nonconsent.

¶20 The State asserts that, under the circumstances of this case, nonconsent is present as a matter of law, regardless of whether Evelyn consented to the sexual activity as a matter of fact, and that therefore the USC Statute cannot—by its terms—apply here. The State's assertion is correct.

¶21 Utah's consent statute "provides that a sexual act 'is without consent of the victim under any of the following circumstances,' and then lists twelve specific situations" that constitute nonconsent as a matter of law. *See State v. Mottaghian*, 2022 UT App 8, ¶ 36, 504 P.3d 773 (quoting Utah Code Ann. § 76-5-406), *petition for cert. filed*, April 13, 2022 (No. 20220349). The existence of many of the listed situations depends on the specific

facts of the sexual activity in question, including situations where "the victim expresses lack of consent through words or conduct," where "the actor overcomes the victim through actual force or violence," or where "the actor knows the victim is unconscious." *See* Utah Code Ann. § 76-5-406(1), (2), (5) (LexisNexis 2017). But the existence of two of the listed situations does not at all depend on the specific facts of the sexual activity in question. Under the statute, consent can never be present, regardless of the actual facts of the encounter, if "the victim is younger than 14 years of age," *id.* § 76-5-406(9), or if "the victim is younger than 18 years of age" and the defendant "occupied a position of special trust in relation to the victim as defined in" Utah's sexual abuse of a child statute, *id.* § 76-5-406(10) (referring to Utah Code Ann. § 76-5-404.1).

¶22   Utah's sexual abuse of a child statute, in turn, defines "position of special trust." *See id.* § 76-5-404.1(1)(c). That statute lists over twenty different categories of people who, as a matter of law, are considered to hold positions of special trust in relation to another individual with whom that person has sexual contact. *Id.* For instance, the statute declares that parents, grandparents, aunts, uncles, guardians, babysitters, coaches, and religious leaders all occupy positions of special trust. *Id.* As relevant here, the statute also declares that "a counselor" occupies a position of special trust, *id.* § 76-5-404.1(c)(vii), as does "a teacher or any other person employed by or volunteering at a public or private elementary school or secondary school, and who is 18 years of age or older," *id.* § 76-5-404.1(c)(xix).

¶23   Regardless of whether Calder qualifies as a "person employed by . . . [a] secondary school,"[5] *see id.*, Calder was

---

5. Whether the facility where Calder worked and where Evelyn was in attendance qualifies as a "school" (as the term is used in Utah Code section 76-5-404.1(1)(c)(xix)) occupied much of the district court's attention in its ruling, and occupies much of Calder's attention in his opening brief. We acknowledge the strength of Calder's argument that the facility was in fact a

(continued…)

unquestionably Evelyn's "counselor," and therefore occupied a position of special trust in relation to her.[6] For this reason alone, the State is correct when it asserts that the circumstances presented here fit within the more serious sex offense statutes, and therefore by definition do not fit within the USC Statute. For instance, the rape statute requires the State to prove that Calder

---

"school," but the issue is ultimately irrelevant to our analysis. As noted here, Calder—as Evelyn's counselor—occupied a position of special trust in relation to Evelyn even if the facility was not a school. And as we explain below, in Part I.C, even assuming that any linguistic issues with the statutory scheme may have somehow been of potential benefit to Calder, his ineffective assistance claim nevertheless fails due to his failure to articulate what specific meaningful steps Plea Counsel should have taken beyond merely explaining to him the potential applicability of the USC Statute.

6. In the charging document filed in the underlying criminal case, the State asserted that Calder occupied a position of special trust because he "was [Evelyn's] counselor/therapist." In his written plea statement, Calder did not contest that assertion, admitting that he held a "position of special trust" regarding Evelyn, although he did not specify the grounds upon which that admission was based. The presentence report additionally referred to Calder as "a counselor and therapist," and Calder has not (to our knowledge) taken issue with that characterization. In the PCRA case, the State asserted as an undisputed fact that Calder was Evelyn's "therapist," an assertion Calder did not contest. In its summary judgment ruling, the district court stated that Calder "admits that he was [Evelyn's] counselor and therapist." On appeal, Calder does not take issue with this portion of the district court's summary judgment ruling, nor does he attempt to draw any material distinction between a "counselor" and a "therapist." We therefore consider it undisputed that Calder was Evelyn's "counselor" as that term is used in the sexual abuse of a child statute. *See* Utah Code Ann. § 76-5-404.1(1)(c)(vii) (LexisNexis 2017).

had sexual intercourse with Evelyn without her consent. *See id.* § 76-5-402(1). Calder admits that he had sexual intercourse with Evelyn, and he does not contest the fact that he did so while occupying a position of special trust in relation to her by virtue of his status as her counselor, a fact that—by statutory definition—means that Evelyn could not have legally consented to the sexual activity. Accordingly, the elements of rape are met. And a similar analysis obtains with respect to forcible sodomy, object rape, and forcible sexual abuse, because Calder committed all the acts in question while acting as Evelyn's counselor. For these reasons, we agree with the State's assertion that, because nonconsent is present here as a matter of law, the circumstances of this case fit within the more serious sex offense statutes, and therefore—by definition—do not fit within the USC Statute.

## B.     The Potential Statutory Inconsistency

¶24     Without taking direct issue with any of the foregoing,[7] Calder identifies a potential flaw in the statutory scheme, and asserts that this flaw should inure to his benefit under rules of statutory interpretation and lenity. Calder asserts that the third category of persons to whom the USC Statute purportedly applies—persons holding "a relationship of special trust as an adult teacher, employee, or volunteer, as described in" the sexual abuse of a child statute, *see id.* § 76-5-401.2(2)(a)(iii)—is a null set, because anyone who qualifies under that category will also, at the same time, meet the criteria of the more serious sex offense statutes, an eventuality which, by statutory definition, removes that person's case from the ambit of the USC Statute.

¶25     Calder's assertion is correct: the third category of persons to whom the 2017 version of the USC Statute purportedly applies

---

7. Indeed, Calder conceded, during oral argument before this court, that his conduct "clearly" fits the statutory elements of the more serious sex offense statutes.

does indeed appear to represent a null set.[8] Because the statutory definition of "relationship of special trust" used in the USC Statute is the same one used in the nonconsent statute, *compare id.* § 76-5-401.2(2)(a)(iii), *with id.* § 76-5-406(10), *and id.* § 76-5-404.1(1)(c)(xix), any person who falls into the third category of the USC Statute will be unable to resist any assertion that the minor could not have legally consented to the sexual activity. Such persons will always be subject to prosecution under the more serious sex offense statutes, and therefore—because the USC Statute, by its terms, does not apply under circumstances amounting to one of the more serious crimes—will not fall within the purview of the USC Statute.[9]

---

8. The State has been unable to present any hypothetical set of facts in which a person would fall into the third category of people set forth in the USC Statute yet would not also simultaneously meet the criteria of the more serious sex offense statutes.

9. In 2018, perhaps in recognition of this problem, our legislature deleted the provision in the USC Statute that previously purported to apply that statute to individuals who held a "relationship of special trust" in relation to the minor. *See* Coordinated Penalties for Sexual Abuse, ch. 394, § 4, 2018 Utah Laws 2681, 2682 (deleting subsection (2)(a)(iii) from Utah Code Ann. § 76-5-401.2). After the 2018 amendment, the USC Statute applies only to persons who are (a) ten or more years older than the minor, or (b) between seven and nine years older than the minor and who know or reasonably should know the minor's age. *See* Utah Code Ann. § 76-5-401.2(2)(a) (LexisNexis Supp. 2021). At the same time, however, our legislature created a new sentencing enhancement statute providing that any person convicted under the USC Statute, and who "held a position of special trust" in relation to the minor, "may be subject to an enhanced penalty." *See id.* § 76-3-203.13 (LexisNexis Supp. 2021). While the 2018 amendments do appear to have fixed the problem identified by Calder as applied directly to the USC Statute, it appears to us as

(continued…)

though the sentencing enhancement statute—at least from a pure statutory interpretation standpoint (leaving aside, for present purposes, situations involving creative plea bargains in which parties are willing to indulge a legal fiction)—applies to no one: anyone holding a "position of special trust" will have committed rape (or one of the other more serious sexual offenses) rather than unlawful sexual conduct, because the sexual activity in question will, as a matter of law, have been nonconsensual. As noted, where the offense constitutes rape (or one of the other more serious sex offenses), the offense by definition does not constitute unlawful sexual conduct. *See id.* § 76-5-401.2(2)(a) (stating that the USC Statute applies only in "circumstances not amounting to" any of the more serious sexual offense crimes).

And, for what it's worth, we note that a similar problem may be present in the statute criminalizing eight different categories of sexual activity occurring between adolescents. *See id.* § 76-5-401.3 (LexisNexis Supp. 2021) (the Adolescent Statute). Like the USC Statute, the Adolescent Statute does not require the State to prove nonconsent. *See id.* And the Adolescent Statute, like the USC Statute, makes clear that it does not apply under circumstances amounting to rape (or other serious sex offenses). *See id.* § 76-5-401.3(1)(b). The categories set forth in the Adolescent Statute are based on the relative ages of the respective participants, with higher penalties (third-degree felonies) for situations in which a seventeen-year-old engages in sexual activity with a twelve- or a thirteen-year-old, *see id.* § 76-5-401.3(2)(a), and lower penalties (misdemeanors) as the age difference between the minors narrows, *see id.* § 76-5-401.3(2)(h) (making it a class C misdemeanor for a fourteen-year-old to engage in sexual activity with a thirteen-year-old). Seven of the eight categories set forth in the Adolescent Statute describe conduct in which the younger participant is less than fourteen years of age. *See id.* § 76-5-401.3(2)(a)–(d), (f)–(h). But under Utah's nonconsent statute, a person "younger than 14 years of age" cannot legally consent to sexual activity, *see id.* § 76-5-406(2)(i) (LexisNexis Supp. 2021), and therefore any person—even another

(continued…)

¶26 After identifying this statutory conundrum, Calder urges us to interpret the USC Statute in a different way, one that he argues would give meaning to the third category of persons listed in that statute. Specifically, Calder asserts that the exclusionary language in the USC Statute—stating that it does not apply under circumstances "amounting to" any of the more serious sex offenses—should be "narrowly construed" to foreclose application of the USC Statute only in cases where the minor "does not factually consent." Under this proposed interpretation, the USC Statute would apply—notwithstanding the State's ability to prove a more serious sexual offense—whenever the State's method of proving nonconsent was one of the two "legal" methods set out in the consent statute. *See id.* § 76-5-406(9), (10). Calder asserts that this interpretation is required by rules of construction requiring us to "give every word meaning and effect, and [to] avoid any interpretation that renders parts or words in a statute inoperative or superfluous." (Citing *In re West Side Prop. Assocs.*, 2000 UT 85, ¶ 31, 13 P.3d 168 (Howe, C.J., dissenting).) And Calder asserts that the rule of lenity requires us to interpret the statute in the manner most favorable to him. *See State v. Rasabout*, 2015 UT 72, ¶ 22, 356 P.3d 1258 ("The rule of lenity requires that we interpret an ambiguous statute in favor of lenity toward the person charged with criminal wrongdoing.").

¶27 But given Calder's acknowledgement that his actions fit within the more serious sex offense statutes, even if we were—for the sake of argument—to interpret the USC Statute in the manner Calder urges, that would at most create a situation in which Calder's conduct fits within *two* statutes rather than just one. Such situations do, of course, raise concerns. Indeed, our supreme court

adolescent—engaging in sexual activity with a twelve- or thirteen-year-old would seem, under statutory definition, to have committed a more serious sex offense, in which event the Adolescent Statute, by its own terms, has no application.

The issues described in this footnote may warrant legislative attention, to the extent that the provisions of these statutes do not reflect legislative intent.

has held that "where there is doubt or uncertainty as to which of two punishments is applicable to an offense an accused is entitled to the benefit of the lesser." *See State v. Shondel*, 453 P.2d 146, 148 (Utah 1969); *see also State v. Jeffries*, 2009 UT 57, ¶ 15, 217 P.3d 265 (stating that, under the *Shondel* doctrine, "where two statutes define exactly the same penal offense, a defendant can be sentenced only under the statute requiring the lesser penalty" (quotation simplified)); *State v. Fedorowicz*, 2002 UT 67, ¶ 48, 52 P.3d 1194 (explaining "the purpose of the *Shondel* doctrine," and stating that "[e]qual protection of the law guarantees like treatment of all those who are similarly situated" and that, therefore, "the criminal laws must be written so that there are significant differences between offenses and so that the exact same conduct is not subject to different penalties depending upon which of two statutory sections a prosecutor chooses to charge" (quotation simplified)); *State v. Bryan*, 709 P.2d 257, 263 (Utah 1985) (concluding that, for the *Shondel* doctrine to apply, the two statutes in question must be "wholly duplicative as to the elements of the crime").

¶28 But Calder brings these issues to us in the context of a PCRA claim in which he alleges ineffective assistance of counsel, a reality that requires us to examine these issues through the lens of the specific ineffective assistance claims he raises. And after assessing those claims, we conclude that Calder has not carried his burden of demonstrating that Plea Counsel rendered constitutionally ineffective assistance.

C. Calder's Specific Ineffective Assistance Claim

¶29 To establish that Plea Counsel rendered constitutionally ineffective assistance, Calder must show both (1) that Plea Counsel's performance was deficient, in that it "fell below an objective standard of reasonableness," and (2) that this deficient performance "prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *accord*

*State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350; *State v. Ray*, 2020 UT 12, ¶ 24, 469 P.3d 871. "A defendant must satisfy both parts of this test in order to successfully establish ineffective assistance." *State v. Whytock*, 2020 UT App 107, ¶ 26, 469 P.3d 1150. Thus, "it is unnecessary for a court to address both components of the inquiry if we determine that a defendant has made an insufficient showing on one." *Id.* (quotation simplified).

¶30 To demonstrate prejudice in the context of an ineffective assistance claim related to a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (quotation simplified), *and* "that a decision to reject the plea bargain would have been rational under the circumstances," *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *accord Ramirez-Gil v. State*, 2014 UT App 122, ¶ 8, 327 P.3d 1228.

¶31 The ineffective assistance claim Calder articulated in his PCRA petition is relatively narrow. In the petition itself, Calder stated only that Plea Counsel "failed to provide significant legal advice to him" and "failed to undertake any basic legal analysis of the charges" against him. In the memorandum supporting his petition, Calder asserted that he should have been charged under the USC Statute, and that Plea Counsel should have further "investigate[d]" the applicability of the USC Statute and "discussed this nuance of the law" with him prior to his plea. He further asserted that Plea Counsel should have done more to find additional information about similarly situated individuals who, Calder claims, were charged under the USC Statute, and that Plea Counsel should have "raised this defense."

¶32 But Calder is remarkably nonspecific about exactly what he would have done differently had Plea Counsel better explained the statutory conundrum to him, or exactly how Plea Counsel should have "raised this defense." In his petition and accompanying memorandum, Calder offered no specifics in this regard. In his memorandum opposing the State's summary

judgment motion, Calder identified, by name, another individual who Calder asserted was similarly situated—a teacher accused of sexual activity with students—and explained that, in the teacher's case, her attorney had filed a "motion to amend" her charges to third-degree felonies in light of the USC Statute; Calder attached a copy of the teacher's motion as an exhibit to his memorandum. Examination of that exhibit reveals that the teacher's attorney cited the *Shondel* line of cases and attempted to mount a legal argument that, in her case, a prosecution for rape (rather than for unlawful sexual conduct) would be improper. But Calder mentioned the teacher's motion only in passing, and made no effort to meaningfully brief *Shondel* issues in connection with the State's summary judgment motion. Even on appeal, Calder does not brief any *Shondel* issues, failing to cite *Shondel* at all in his opening brief and only in passing in his reply brief.

¶33 This level of attention was inadequate to allow the district court a meaningful opportunity to evaluate any *Shondel* issues. Analysis of whether a prosecution violates the principles identified in *Shondel* is nuanced and complicated. *See generally State v. Ainsworth*, 2017 UT 60, ¶¶ 22–31, 423 P.3d 1229. In order for *Shondel* to apply, the two statutes in question must be "wholly duplicative as to the elements of the crime," *State v. Bryan*, 709 P.2d 257, 263 (Utah 1985), and must "proscribe the exact same conduct," *State v. Jeffries*, 2009 UT 57, ¶ 15, 217 P.3d 265. While we appreciate the issues Calder has raised, and recognize that problems may arise if prosecutors are given unfettered discretion to charge identical conduct under different statutes, in the absence of more fulsome briefing on the question—before both the district court and this court—we remain less than fully convinced that the specific facts of this case present us with a *Shondel* problem. In particular, and given *Shondel*'s requirement that the two statutes be "wholly duplicative," *see Bryan*, 709 P.2d at 263, Calder makes no effort to discuss the fact that he occupied a position of special trust in relation to Evelyn by virtue of his status as her counselor, and that he was thus eligible for prosecution under the more serious sex offense statutes *regardless* of whether he also fit within the third category of persons listed in the USC Statute. At a

minimum, Calder has not borne his burden of persuasion on that point. And this shortcoming is ultimately fatal to Calder's ineffective assistance claim.

¶34 In order to demonstrate that he was prejudiced by Plea Counsel's advice regarding (and actions prior to) the decision to enter into the plea agreement, Calder must convince us that there exists "a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59 (quotation simplified). But Calder cannot show any such reasonable probability, unless he can first demonstrate that it was reasonably probable that competent counsel would have somehow succeeded in getting Calder's charges reduced from first- and second-degree felonies (under the more serious sex offense statutes) to third-degree felonies (under the USC Statute). In the absence of such a reduction, Calder's plea deal was, in our view, quite favorable: he had admitted to the sexual activity in question and the State could prove nonconsent as a matter of law due to his status as Evelyn's counselor, and the State nevertheless agreed to dismiss twelve of the seventeen counts. Calder simply has not shown that a reasonable attorney would have advised him not to take that deal under those circumstances, nor has he shown that there is a reasonable probability that he would not have taken that deal.

¶35 Certainly, if Calder were able to show that a reasonable attorney, acting competently, would have likely succeeded in persuading either the State or the court to reduce the seventeen counts to third-degree felonies, thus lowering the starting point for plea negotiations, the situation may well be different. In an alternate universe in which Calder was facing seventeen third-degree felonies, it may not have been reasonably likely or rational for him to have pled guilty to five first- and second-degree felonies. But Calder did not inhabit that universe, because he has not carried his burden of demonstrating that the State was required—by *Shondel* or any other legal principle or doctrine—to charge him under the USC Statute rather than the more serious sex offense statutes. Given the realities of Calder's situation, it

would have been irrational for him to have rejected the terms of the plea deal and to have insisted on going to trial.

¶36 For these reasons, Calder's ineffective assistance claim fails for lack of prejudice. On this basis, we conclude that the district court did not err when it rejected Calder's ineffective assistance claims on summary judgment.

## II. Other Constitutional Claims

¶37 Calder next argues that the district court erred when it concluded that his other constitutional claims (raising equal protection and vagueness issues) in relation to the USC Statute were procedurally barred under the PCRA. As noted above, the PCRA "specifies that a person is not eligible for relief if the petition is based upon any ground that . . . could have been but was not raised at trial or on appeal." *Gordon v. State*, 2016 UT App 190, ¶ 29, 382 P.3d 1063 (quotation simplified). "This rule applies to all claims, including constitutional questions." *Id.* (quotation simplified). And our case law demonstrates "that a defendant 'could have' raised a claim when he or his counsel is aware of the essential factual basis for asserting it." *Pinder v. State*, 2015 UT 56, ¶ 44, 367 P.3d 968. The district court dismissed Calder's constitutional claims on the basis that Calder could have raised them in the previous case.

¶38 Calder challenges the district court's ruling on two grounds. First, he argues that he did not have a sufficient factual basis to assert these claims in the previous case. With regard to his vagueness claim, his challenge fails for the simple reason that Calder himself asserts, in his brief, that the applicable statutes are "obviously vague." Calder does not set forth any facts that he did not know at the time, but knows now, that would allow him to proceed with a vagueness claim.

¶39 Calder's equal protection claim is grounded in the notion, discussed to some extent above, that there existed other similarly situated individuals—teachers or employees at secondary

schools—who engaged in sexual activity with sixteen- or seventeen-year-olds and were prosecuted under the USC Statute instead of the more serious sex offense statutes. But Calder acknowledges that he was aware of at least some of these other cases prior to entry of his guilty plea; indeed, in an affidavit attached to his petition, Calder stated that, before he pled guilty, he informed Plea Counsel of at least one such similar case. And Calder acknowledges that, after entering his plea but before sentencing—when he could have filed a motion to withdraw his plea, *see* Utah Code Ann. § 77-13-6 (LexisNexis 2017)—he learned about another similarly situated individual who was charged under the USC Statute instead of under the more serious sex offense statutes. Thus, we conclude that Calder had a sufficient factual basis, prior to his sentencing, to bring claims sounding in equal protection and vagueness.

¶40　Second, in his reply brief Calder notes—correctly—that the PCRA exempts ineffective assistance claims from its rule that claims are barred if they could have been raised earlier, and he attempts to cast his equal protection and vagueness claims as ineffective assistance claims. *See Jones v. State*, 2020 UT App 125, ¶ 32, 473 P.3d 1190 (stating that "a claim in a post-conviction petition that could have been but was not raised at trial or on appeal is not barred if the failure to raise it was due to ineffective assistance of counsel" (quotation simplified)). But Calder did not state these claims as ineffective assistance claims in his PCRA petition, and he did not appear to argue them that way in his opening brief.[10] Certainly, the district court did not interpret his

---

10. Calder's opening brief is, at a minimum, less than clear about whether he intends to argue his equal protection and vagueness claims through the lens of ineffective assistance of counsel. It is not until his reply brief that Calder explicitly states that his constitutional claims "are all made through the lens of ineffective assistance of counsel." That argument is therefore waived. *See State v. Johnson*, 2017 UT 76, ¶ 16, 416 P.3d 443 ("When a party fails to raise and argue an issue on appeal, or raises it for the first time

(continued…)

constitutional claims as ineffective assistance claims. Had Calder cast his constitutional claims that way from the outset—and alleged in his petition that Plea Counsel was ineffective for not bringing constitutional claims—we might be presented with a different situation. But our review of the record reveals that Calder did not plead his claims that way. To be sure (as discussed above), Calder did claim that Plea Counsel was ineffective. But he never asserted, as a claimed item of ineffectiveness, that Plea Counsel failed to bring these constitutional claims. On this record, the district court did not err in interpreting Calder's equal protection and vagueness claims as direct claims, and it did not err by dismissing those claims as violative of the PCRA's bar on claims that could have been previously brought.

CONCLUSION

¶41 Calder has succeeded in identifying a potential conundrum in the way the USC Statute, as it existed in 2017, interacted with other sex offense statutes. But on the record before us, the district court did not err in summarily dismissing Calder's claims for ineffective assistance of counsel, because Calder has not borne his burden of demonstrating what, if anything, Plea Counsel could or should have done to leverage the statutory conundrum into a different plea agreement. And the district court did not err in summarily dismissing Calder's other constitutional claims as procedurally barred under the PCRA.

¶42 Affirmed.

––––––––––

in a reply brief, that issue is waived and will typically not be addressed by the appellate court."). But even if it wasn't waived, Calder still faces a preservation problem, because he did not plead his equal protection and vagueness claims as ineffective assistance claims before the district court.